## Amos Chaffee v. Joseph Granger and Others.

Where labor was performed under a contract with the city of Detroit before the Revised Charter of 1851 was adopted, and the Common Council, after the Revised Charter took effect, passed a resolution for the settlement of the contractor's claim therefor, such resolution does not require the mayor's approval.

Under the charter of Detroit, claims for the construction of a sewer are to be paid only from a fund, specially voted and raised for that purpose. While a claim against a sewer fund (which the city disputes) is pending and unadjusted, the rights of the claimant can not be affected by a transfer to the sinking fund of the balance standing to the credit of such sewer fund.

Where a claim for extra work and alterations was made against the city of Detroit,

by a contractor for the construction of sewers, and suit was brought for the recovery thereof, and the Common Council directed the City Attorney to permit judgment to pass therefor, which he did, and there could be no serious doubt of the legality of the larger portion of the demand, and the question as to the remainder was, at most, one of doubtful construction of the agreement under which the work was done, and the action of the Council appeared to have been taken in good faith; — *Held,* That there was no just ground for the interference of a court of equity, in behalf of a tax payer, to restrain the collection of the judgment.

If courts of equity have jurisdiction to interfere, by injunction, to restrain the action of a municipal corporation, on a bill filed by a tax payer on behalf of himself and other tax payers, the circumstances to authorize such interference must be such as to show that the proposed action will be inequitable, and injurious to the public interest.

*Heard November 10th and 11th. Decided November 23d.*

Appeal from Wayne Circuit in Chancery:
The case is sufficiently stated in the opinion of the court.

*G. V. N. Lothrop,* for complainant:

1. A tax payer, in behalf of himself and all others in like interest, may bring his bill to restrain a municipality from the waste or unlawful expenditure of public money or property. — *Adriance v. Mayor, &c.* 1 *Barb.* 19; *Christopher v. Mayor, &c.* 13 *Barb.* 571; *Milhau v. Sharp,* 15 *Barb.* 193; *DeBaun v. Mayor, &c.* 16 *Barb.* 392; *Bromley v. Smith,* 1 *Sim. Ch.* 8; *New London v. Brainard,* 22 *Conn.* 556.

2. The claim of Granger was illegal under the city charter. All the work upon which it was founded was included within and paid for under his contracts. — *Laws of* 1851, *p.* 41; *Revised Charter of* 1857, *chap.* 8, §§ 11, 17, 18, 19, 20, 21. By the act of March 21st, 1851, no public work could be contracted for, or commenced, until a tax had been levied to pay the same; and no such work could be paid for, or contracted to be paid for, save out for the proceeds of said tax; *and all contracts made in contravention thereof were declared to be void.*

Sec. 18, chap. 8, of the Charter of 1857, provides that "no claim or demand against the corporation shall be allowed or paid, or warrant on the treasury issued therefor, if the same be contrary to, or not authorized by, law; *and no addi-*

*tional allowance* beyond the legal claim, under any contract with the corporation, or for any service on its account, or in its employments, shall be allowed." This language is unequivocal, and was designed to protect the treasury against those fraudulent claims which inevitably followed in the train of every contract, and which always achieved an entire or partial allowance.

If Granger's claim was of this character, the Common Council could not lawfully pay it directly, nor could they, by the clever device of suit and confession of judgment, do indirectly what they could not do directly. Equity may restrain municipal corporations from the exercise of powers which they do not possess.— *Oakley v. Trustees, &c.* 6 *Paige,* 264; *New London v. Brainard,* 22 *Conn.* 556.

3. The suit is not in the nature of ordinary bills for the staying of proceedings at law. Its true character is to restrain a municipal body from the exercise of powers expressly prohibited by law. But even if regarded strictly as a proceeding to restrain a judgment at law, the relief sought should be granted. It is a general doctrine of equity to restrain proceedings at law where one party has gained an inequitable advantage without fault of the other. Whenever it is against conscience to execute a judgment at law, and the party threatened with injury thereby had no opportunity for defense at law, he may be protected by the injunction of this court.— *Hendrickson v. Hinckley,* 17 *How.* 443; *Lansing v. Eddy,* 1 *Johns. Ch.* 51; *Simpson v. Hart, Ibid.* 98; *Powers v. Butler,* 3 *Green Ch.* 470; *Moore v. Gamble,* 1 *Stock. Ch.* 247. It is said complainant was bound by this judgment, because he was represented by the Common Council and its attorney, who, for this purpose, were complainant's agents. But when acting fraudulently; when acting not merely erroneously, but in entire excess of their authority; when doing that which they are positively forbidden to do,— they are not his agents. They are naked wrong-doers, without color of justification. A more just light is to regard

them as trustees. And then the rule of equity fairly applies. They will be held to perfect good faith, and to strict duty. And this court will always restrain the waste or conversion of property controlled by them in trust.—22 *Conn.* 556.

*Howard, Bishop & Holbrook*, for defendant Granger:

1. The complainant, as a mere tax payer of Detroit, has no right to maintain this suit. The injury, if any, is of a public nature, and the remedy should be by information of the Attorney General, or other proper public authority.— *Attorney General v. Liberford*, 1 *Myl. & Cr.* 171; *People v. Regents of University*, 4 *Mich.* 98. We submit that some of the cases have gone too far in allowing private persons to restrain municipal corporations by injunction, and that they ought not to be followed in this state. But this case is clearly distinguishable from those. It is not merely to control a municipal corporation, but assumes, in addition to that, the far more questionable object of controlling also a final judgment at law, where there can be no pretence of fraud, or other ground of equitable interference. There is no precedent for it in the books. A mere private person can not interfere with proceedings at law in any such collateral way.

Complainant was himself a party to the suit, as one of the *freemen* named in the writ. He was fully represented by the corporation, and by the city attorney, and is bound by their acts. It is certain that no other citizens would be bound by the decree in this case, as they are not parties to the record, and Chaffee has no authority to act for them.

2. The resolution of the Common Council, authorizing judgment on this claim, did not require the approval of the mayor—the liability having accrued before the Revised Charter took effect.—*Laws of* 1857, *p.* 92, §5.

3. The city authorities had no power to defeat this claim by transferring the sewer funds while this remained unadjusted. It was only such moneys as could be *saved* from any sources of revenue that could be thus transferred. How

saved? Of course only after all legal claims should be adjusted.

4. Granger's claim in this case was strictly of a legal character, and its determination belonged properly to the court of law. The law officers of the city, and other city officers, thought it just. It could not be settled, and went to litigation; it was compromised and settled by mutual concessions. In all this we look in vain for evidence of fraud. If the injunction is sustained, we shall be entitled to have the judgment opened, and a new trial — a thing which no one desires, and all have tried to avoid.

5. It is clear that this is not such a case as authorizes a court of equity to interfere and control a judgment at law. — *Adams' Equity,* 196, 197; 2 *Story Eq. Juris.* §§ 887, 888, 894 to 897; *Story Eq. Pl.* §§ 780 to 782; 1 *Sch. & Lef.* 201; 1 *Johns. Ch.* 91; 7 *Cranch,* 332.

CAMPBELL J.:

This case comes up on appeal from the decree of the Circuit Court for the County of Wayne, enjoining the collection of a judgment which the defendant Granger recovered against the City of Detroit. His co-defendant, Cicott, was made a party, as sheriff, holding the execution which had issued upon the judgment.

The bill was filed by Amos Chaffee, as a tax payer of the city of Detroit, on behalf of himself and the other tax payers, claiming that the judgment was rendered against the City by collusion and fraud, upon an illegal claim, in violation of the city charter. The case shows the following facts:

Granger, in 1855, took contracts to build certain sewers. Although all but one of his contracts were parol, they were made according to certain others which were in writing, and their terms thus made certain. When his work was completed, the city authorities declined paying certain items, on the ground that he was precluded by the terms of his contracts from making any charges for them. Those items con-

sisted of a charge of $212.54 for excavations for pools and pipes connected with the main sewers, to discharge surface water, and $94.12 for extra excavation rendered necessary by a change in the form of the sewers in certain places where quicksands made the change desirable. Upon an application to the Common Council, a resolution was passed, authorizing the controller to pay the first charge, if Granger could satisfy him that when the contracts were taken he expected to get pay for such work.

The controller refused to allow the claim, and Granger brought suit for the whole amount of his charges. The City pleaded to his declaration; and Granger having noticed the cause for trial, the Common Council authorized the city attorney, on his advice, to withdraw the plea, and allow judgment to be rendered for $306.66, the amount of the principal claimed, without interest. Granger accordingly obtained a judgment for that amount, and was proceeding to enforce the same by levy and sale of land, when enjoined in this suit.

There is nothing in the case in any way justifying the charge of fraud, and if complainant was entitled to any relief, it must depend upon the illegality of the acts in proof. We proceed, therefore, to examine the case upon this subject.

That the authority to confess judgment was, for the purposes of this suit, substantially equivalent to the allowance of a claim, is not unfairly assumed by the complainant, and the validity of such allowance is attacked, *first*, because the resolution was not approved by the mayor; *secondly*, because the balances left out of the sewer funds, specially voted for those sewers, had been transferred to the sinking fund, and therefore no moneys remained applicable to any such claim; and, *thirdly*, because the claim was illegal, and, therefore, the Council could not allow it under any circumstances, because absolutely forbidden by the city charter. It is unnecessary to consider the arguments upon the peculiar form of any of these transactions; for a court of equity can generally reach the substantial intent of any acts in question before it. In this case no

special difficulties of this kind arise, for the merits are very fully in evidence.

Whether the resolution required the approval of the mayor depends upon whether the claim was a debt or liability lawfully contracted before the adoption of the new charter. That it was a previous debt — if a debt at all — there is no doubt. It had been before the city authorities for more than a year. The suit at law was commenced in 1856, and the amended charter was passed in 1857. The approval of the mayor is, therefore, of no consequence here, because the legality of the claim would dispense with it, while its illegality would probably render such approval nugatory.

Neither is it material that the sewer balances had been transferred to the sinking fund. That transfer was made while Mr. Granger's claim was pending. The balances were ample to meet his claim. If his claim was lawful, those funds were liable to pay it, and could in no sense be considered as savings. Nothing can properly go into the sinking fund from any sum provided by law for specific public works, except a surplus over and above their cost. The contractors are by law compelled to look to the fund voted for specific improvements, and no transfer into the sinking fund can be permitted to deprive them of the right to receive their lawful pay out of the moneys raised for the works. When the contractors are fully paid, any balance may be called a surplus, and legitimately belongs to the sinking fund.

Was, then, the demand of Mr. Granger such that it could be lawfully allowed by the Common Council? Both items are set up as legitimate charges under the contracts, one being for excavations required to be made under the original agreement, and the other being for extra work required to carry out changes made by authority, and contemplated by the original agreement as payable for upon the same basis as the specified work. The prices for both sets of work are strictly in accordance with the prices paid for similar excavations under the express terms of the contracts. The only inquiry therefore

6 MICH.—E.

is, whether the Council could legally, in view of the terms of the agreements, make the arrangement complained of. Complainant claims that by the contracts, each set of pools and pipes was to be completed for a fixed sum, and that this covered the excavations as well as the iron and mason work. The terms of the written contract referred to are as follows: The contractor agrees to build a "*public sewer*" according to the plans and specifications, and that he will go on and steadily prosecute the "*excavating and building of said sewer,*" &c. The contract goes on to provide for the quality of material, for the right of supervision and alteration, &c., and so far as it embraces any covenants on the part of the contractor, no reference is had to any particular parts of the work. The term "*sewer*" embraces every part of it. It is only when we reach the terms of payment, that any thing is found relating to the details of the work. The clause in controversy reads as follows:

"The parties of the first part hereby agree to pay, and the party of the second part to accept, in full payment for said work, labor, and materials, as follows, viz.: For excavating, digging, and filling back, the earth in said sewer, the sum of forty-two (42) cents per cubic yard; for furnishing materials and iron castings, and inserting cast iron openings, and building said sewer, the sum of eleven dollars per rod. For furnishing materials and iron castings, and constructing pools, the sum of forty dollars per set. For furnishing materials and iron castings, and constructing manholes, the sum of ten dollars per manhole."

This is quoted from the contract appended to the bill, made with Mr. Granger. The others, made with other parties, and upon the basis of which he made his parol contracts, are substantially like this.

Taking this contract as it reads, and apart from any circumstances which might show a practical construction of any of the phrases between the parties, we do not think the language of the instrument in any way violated by extending the right to charge for excavation to any part of the work. The terms used

CHAFFEE v. GRANGER.

in reference to the materials and construction of pools, are identical in meaning with those applied to the mere iron and mason work of the main body of the sewer, and if the one does not include excavation, we see no reason why the other should. The amount of excavation would vary in different pools and connecting pipes, with the depth of the main sewer, just as that in different parts of the main trunk would. If either party needs to resort to proof of surrounding circumstances, it would devolve upon the City to do so, in order to change what we deem to be the natural construction of the contract.

The facts in this case show that when Granger took the contracts in question, the usage had been in conformity with this construction, and therefore he would be equitably entitled to pay on this basis under any circumstances.

The other item in dispute is for extra work in changing the form of the sewers to put in plank bottoms. The evidence shows that the actual extra expense to Granger, in addition to the plank which was furnished by the City, is the amount he claims in his bill of items. But it is claimed that he agreed if the City would furnish the plank, that he would make no further extra charge. The committee on sewers authorized the change, which was deemed necessary by all parties. The testimony of Sheley is that he said to Granger that "all the extra we are to furnish is the plank," and Mr. Granger consented to it. This seems to have been about all that was said about it. There was undoubtedly room for misapprehension on both sides on this matter, but inasmuch as the expense of the change covered much more than the plank, and as the contract expressly provided that where authorized changes were made, additional compensation should be made for any additional work, upon the same terms provided for in the contract for similar work, we think Mr. Granger might very naturally suppose that the extra referred to applied merely to the body of the sewer in its changed form and dimensions. It could not be assumed, without clear proof, that he agreed to make changes at his own expense.

In the view we have taken of the facts, we think the claim of Mr. Granger was properly allowed by the Council. We are also of opinion that if the matter had been one of doubtful construction, and acted upon in good faith, as this seems to have been, by the Council, there would have been, upon the facts presented, no just ground for the interference of a court of equity. If courts of equity are called upon to interfere with the action of such municipal bodies, on behalf of the tax payers, the circumstances should be such as to show that the proposed action will be inequitable and injurious to the public interests. No serious doubt could have existed concerning the legality of the larger part of Mr. Granger's claim; and the cost of litigation, if he had been compelled to try his suit at law, would inevitably have exceeded the balance. Under such circumstances, the action of the Council was in no sense injurious to the tax payers, and their burdens could not have been increased by it.

The jurisdiction of Chancery to interfere by injunction to restrain a city corporation, on a bill filed by a private citizen on behalf of himself and others, was questioned on the argument, and the point fairly raised. We are not, however, prepared to express an opinion upon that subject; as this case is, in our judgment, entirely unsupported on the merits, we shall dispose of it upon the facts, and reserve the consideration of the jurisdictional question for future disposal.

The decree of the court below must be reversed, and the bill dismissed, with costs.

The other Justices concurred.