**WARRENVILLE STATE BANK et al. v. FARMINGTON TP. et al.**

**Civ. A. No. 7021.**

United States District Court
E. D. Michigan, S. D.

Sept. 20, 1948.

John Marvaso, of Detroit, Mich., for plaintiff.

Arthur E. Moore, of Royal Oak, Mich., for defendants.

Miller, Canfield, Paddock & Stone, of Detroit, Mich., for intervening defendant.

KOSCINSKI, District Judge.

### Findings of Fact

1. Under Michigan's "Revenue Bond Act of 1933, Public Acts of Michigan 1933", as amended, and enabling ordinance pursuant thereto adopted by the Township Board, the defendant township, a political subdivision of Oakland County, State of Michigan, and a public corporation, as defined by the Act, on or about October 1, 1940, issued its "Section 36 Water Supply System Revenue Bonds" in the amount of $110,000 for improving, enlarging and extending an existing, but inadequate, water supply system. The bonds were in denominations of $1,000 each, with 4½% interest coupons attached.

2. Plaintiffs are non-residents of the State of Michigan and are the holders of 23 of these bonds, in the aggregate of the face value of $23,000. The individual defendants are, respectively, supervisor, clerk, and treasurer of defendant township. Retirement of the bonds was provided for in the following manner:

$2,000.00 — October 1 of each year from 1944 to 1947, inclusive;

$3,000.00 — October 1 for 1948 and 1949;

$4,000.00 — October 1 of each year from 1950 to 1953, inclusive;

$5,000.00 — October 1 of each year from 1954 to 1969, inclusive.

3. At the time of the filing of this suit on November 26, 1947, there was a default in the retirement of 8 of the bonds for a total amount of $8,000. There was also a default on the payment of interest, represented by the coupons, in the amount of $9,900 on the whole bond issue.

4. An unsuccessful attempt to refund the bond issue at a lower interest rate was

made by the township board prior to this proceeding.

5. This suit is brought by plaintiffs under Section 9 of Act 94, providing that not less than 20% of the bondholders of the entire issue then outstanding may, either at law or in equity, by suit, mandamus, or other proceedings, protect and enforce their statutory lien and enforce and compel the performance of all duties of the officials of the borrower, including the fixing of sufficient rates, the collection of revenues, the proper segregation of revenues, and the proper application thereof.

6. The construction of this water supply system is a self-liquidating project. The principal and interest upon such bonds are payable solely from such net revenues derived from the operation of such public improvement. Sec. 7 of Act 94.

7. Section 10 of the Act provides that if there by any default in the payment of the principal of or interest upon any of said bonds, any court having jurisdiction in any proper action may appoint a receiver to administer and operate on behalf of the borrower, under the direction of said court, any public improvement the revenues of which are pledged to the payment of such principal and interest; and by and with the approval of said court, to fix and charge rates and collect revenues sufficient to provide for the payment of any bonds or other obligations outstanding against the revenues of said public improvement and for the payment of the expenses of operating and maintaining the same and to apply the income and revenues of said public improvement in conformity with this act and the ordinance providing for the issuance of such bonds and in accordance with such orders as the court shall make.

8. Under Section 11 of the Act, these bonds are not subject to any limitations or provisions contained in the laws of the State of Michigan, pertaining to public corporations, or in the charters of public corporations, as now in force or hereafter amended, other than as provided for in this Act.

9. Although Sec. 18 of the Act and Sec. 7 of the Ordinance require the township to pay the reasonable cost and value of water service used by it, the township officers admit that this mandatory requirement was not complied with ever since the date of the bond issue, notwithstanding there are 44 fire hydrants and 3 public buildings in the district supplied by water from this water supply system. Other municipalities in Michigan, some adjacent to or near by Farmington Township, pay annually from $10 to $100 per hydrant.

10. As of October 30, 1947 the township had in its treasury the sum of $14,166.40 in the fund set aside under the Act for retiring the bonds and payment of interest and for maintenance and operation of the water-supply system, of which $2,580 represented water-meter deposits and $1,299.02 repayment due users, as well as $1,000 for bills payable and miscellaneous expenses. During the pendency of these proceedings and on order of this court, the township paid out of this fund the sum of $9,900 interest on all of the bonds outstanding, to April 1, 1948.

11. There has been no increase in the water rates since the date of the bond issue, notwithstanding the duty imposed on the township by Sec. 21 of the Act, and Sec. 8 of the Ordinance, to maintain a level of rates at all times sufficient for the retirement of bonds and payment of interest when due and payable, and for this purpose to revise the rates from time to time. Also, the evidence in the case established an existing trend upward in water rates since this bond issue.

12. Water rates established by the Ordinance are:

| | |
|---|---|
| For the first 1000 cubic feet or any part thereof | — $3.00 |
| For the next 9000 cubic feet, per thousand | — 1.00 |
| For the next 90,000 cubic feet, per thousand | — .75 |
| For all over 100,000 cubic feet, per thousand | — .60. |

The Ordinance further provides that an additional rate of $3 per quarter, termed the "Debt Service Rate", shall be charged in addition to the foregoing water rates against all customers furnished water through service connections made to water mains installed and paid for with the proceeds from sale of the revenue bonds. This provision exempts 23 users of water serviced by the City of Detroit, from payment of the debt service charges, although all users are being supplied water from a water main connected with the Detroit Water System.

13. At the time of this hearing there were 489 water users in the district—approximately 80% of all the residential and business water users. (Counsel for defendants in his brief states that only 12% of the residents do not use the water service of defendant township.) The annual increase in the number of customers using water in the district is approximately 10%.

14. By Sec. 16 of the Ordinance, the borrower entered into a covenant and agreement with the bondholders "that it will punctually perform all duties with reference to the said Water Supply System required by the Constitution and laws of the State of Michigan, including the making and collecting of sufficient rates and segregating the revenues of said system and the application of the respective funds created by this Ordinance."

15. Water rates vary in areas surrounding Farmington Township—some are higher and some lower than those set forth in the township Ordinance.

16. The immediate cause for defaulting retirement of the bonds and payment of interest is directly traced to the failure of the Township Board to abide by the mandatory provisions of Sec. 21 of the Act and Sec. 8 of the Ordinance.

17. Defendants filed motion to dismiss on constitutional grounds hereinafter more fully stated.

18. It is now the position of the defendants that the interest rate on the bonds is too high and they would like to reduce it to 2% instead of the 4½% they covenanted and agreed to pay when the bonds were sold to the public. The court cannot give consideration to any such plan of the defendants in this proceeding. Further, defendants seek to avoid the township's responsibility by the argument that the community which the water supply system services consists of small homeowners, many of whom would discontinue the water service and dig wells for their supply of water if the water rates were increased; also, that in a few homes the water pressure is insufficient in the summer. There is no credible evidence to support these claims. They are not material to the issues before the court since the same situation prevailed when the defendant township borrowed the money.

19. In an attempted support of their position the defendants produced as witnesses three users of water in the district, out of a total of 489 customers at the time of this hearing.

One of these witnesses, Arthur Hopkins, 29225 Saginaw St., Farmington, testified that he first heard about this lawsuit one week before the trial; that he never registered a complaint concerning higher water rates; that he was unable to pay a higher rate and would go back to his well for water if water service charges were increased. He is employed at the Kaiser-Frazer Company and earns $85 per week. His water rate is $24 per year.

Another witness, Clyde A. Denbo, foreman at Ford Motor Company, earns $75 per week and pays $24 per year for water service. He stated that he would not pay more, but would dig a well. He did not know of this case until two weeks before he was called as a witness.

William C. Campbell, foreman, has $75 per week take-home pay. He first learned of this case ten days before testifying that some of his neighbors would not pay an increased rate.

20. Clayton Goers, the township treasurer, testified that an increase in rates may cause a decrease in revenue, and that he would discontinue water service in case of an increase in rates.

21. Harry McCracken, the township clerk, admitted that he did not talk to anyone who would discontinue using water from the township water supply system.

22. Ernest B. Blanchard, supervisor of the township, said he did not know the

water supply system was running in the red until told by an auditor; also, that in his opinion, the water supply system would lose customers if rates were increased, and that the rates were now high enough.

23. C. Frederick Westlake, a resident of the township, intervened as defendant to oppose the granting of relief requested by plaintiffs, but he did not take the witness stand.

24. Defendants' contention that the water rates are too high and that users will not pay more is not tenable, as being based substantially on mere conjecture, and, as by their own admission, the number of users is increasing by ten per cent each year, and these new users are paying the annual rate of $24.

25. The Township Board, as the governing body of the borrower, has not made any effort for nearly eight years to revise the water rates; it has failed, neglected and refused to abide by the directives of Act 94, as well as the enabling ordinance adopted pursuant thereto, in failing to maintain at all times such rates for water services as shall be sufficient to provide for the retirement of bonds and interest becoming due and payable. They have failed in their duties as officers of the township, without showing any reasons sufficient under the law to excuse or justify their neglect to perform a plain duty. They have, in effect, breached their contract with the bondholders, and the township, as a public corporation, has breached its covenant and agreement with the bondholders, after having received the benefits of the contract with the bondholders.

26. These bonds are negotiable. Their value and current market is depressed because of the default by the borrower, and the failure of its officers, without justifiable excuse, to carry out their part of the contract with the bondholders who purchased the bonds in reliance on the covenant and promises of the borrower, made in pursuance of Act 94 and the township ordinance.

27. Sec. 34 of the Act provides that it shall be liberally construed to effect its purposes.

28. Plaintiffs seek enforcement of remedies provided in the Act, as well as in the ordinance, for the benefit of the bondholders, first, by compelling an increase in water rates by the Township Board for the payment of interest and retirement of the outstanding bonds in accordance with the ordinance adopted in pursuance of the Act; and, second, appointment of a receiver under Section 10 of the Act and Sec. 5 of the Ordinance.

### Conclusions of Law

1. The court has jurisdiction of the parties and the subject matter. 28 U.S.C.A. § 1331 et seq.

2. The appointment of a receiver by a court of equity is discretionary and not mandatory under Act 94, Public Acts 1933, and equitable principles.

3. The bond issue is a contract between the defendant township and the bondholders. The terms and conditions of the contract are found in Act 94, Public Acts of Michigan, 1933, as amended, the Ordinance of the township, and the bonds issued in pursuance thereof.

4. The bondholders are barred by Sec. 9 of the Act from foreclosing their statutory lien and effecting a sale of the water-supply system. Thus, they are without adequate remedy at law. Their only effective remedy to enforce the contractual obligations undertaken by the township is the statutory authority set forth in Secs. 9 and 10 of Act 94, by compelling the township to revise water rates, and appoint a receiver to do so, if necessary.

5. The revision of water rates upward is mandatory on the township to meet retirement of bonds and payment of interest when due.

6. The purpose of this proceeding is the enforcement of contractual rights by the plaintiffs, in the absence of an adequate remedy at law, and the appointment of a receiver is merely ancillary to the accomplishment of that purpose, not an end in itself.

7. In an analogous case, Guardian Savings & Trust Co. v. Road District, 267 U.S. 1, 6, 45 S.Ct. 201, 202, 69 L.Ed. 487, involving collection of special assessments for benefit of bondholders, the Supreme Court of the United States (Justice Holmes

delivering the opinion of the court) said: "It seems to be recognized in Meriwether v. Garrett, 102 U.S. 472, 26 L.Ed. 197, that a receiver might be appointed by a Court of Chancery when that remedy was contemplated by the contract, as it fairly may be said to have been contemplated here. * * * The state law is not merely an enlargement of the remedial powers of a local court as in Pusey & Jones Co. v. Hanssen, 261 U.S. 491, 43 S.Ct. 454, 67 L.Ed. 763, it recognizes the inadequacy of the remedy at law and is an attempt to give to purchasers of bonds the assurance of adequate relief against shortcomings that experience has taught the business world to apprehend. We see no reason why it should not succeed. Campbellsville Lumber Co. v. Hubbert, 6 Cir., 112 F. 718; Stansell v. Levee Board, D. C., 13 F. 846; Supervisors v. Rogers, 7 Wall. 175, 19 L.Ed. 162."

Also, in 113 A.L.R. 755, in an annotation relative to power of court to appoint receiver or other agent to take over duties of municipality or improvement district in respect of collection and distribution of taxes and special assessments, it is stated (p. 761): "Yet with almost complete uniformity both Federal and State courts have appointed receivers to collect tax assessments when authorized to do so by statute." See Preston v. Sturgis Milling Co., 6 Cir., 183 F. 1, 32 L.R.A., N.S., 1020.

Here, the parties agreed by contract to the appointment of a receiver in case of a default in bond and interest payments. This eventuality has occurred and the bondholders seek enforcement of the only adequate remedy to protect their rights under that contract. They should have it.

■ 8. Following the hearing of this case defendants filed a brief in which they attacked the validity of the bonds on the ground that the bond issue transaction is an irrevocable grant of a public utility franchise under Art. VIII, Secs. 19 and 28, of the Michigan Constitution, and therefore subject to affirmative majority vote of the electors of such township. Under Sec. 33 of the Act approval of the bond issue is not required by the voters. In their contention defendants rely on the case of Gentzler v. Smith, Constantine Village Clerk, 320 Mich. 394, 31 N.W.2d 668. That case is not in point. It concerned the issuance of mortgage bonds under Sections 23 to 25 of Art. VIII of the Michigan Constitution, which apply to cities and villages only, and not to townships. Furthermore, Sec. 29 of the Act specifically provides that it shall not be necessary for any borrower operating under the provisions of this Act to obtain any franchise from any state instrumentality.

The Michigan Supreme Court, in Young v. City of Ann Arbor, 267 Mich., 241, 254, 255 N.W. 579, 584, said: "No franchise is required under Act No. 94, Public Acts 1933, because there may be no foreclosure, no taking of the property, and no operation thereof by the bondholders, who may not acquire title thereto by foreclosure, and hence no franchise is necessary to be granted as a part of the security of the bondholders." And 267 Mich. on page 243, 255 N.W. at page 580: "Statutes are enacted by the Legislature, presumably after consideration, and all presumptions are in favor of the constitutionality of the deliberate acts of a co-ordinate department of government."

■ 9. Other constitutional issues were raised in defendants' written motion to dismiss, such as due process of law, equal protection of the laws, and that statutory provision authorizing appointment of receiver constitutes a special act where a general act of the Legislature could be applicable. However, inasmuch as these questions were not supported either by written or oral argument, or citation of authorities, they are deemed to have been abandoned. This likewise applies to defendants' naked assertion that plaintiffs have not complied with provisions of the law relating to class actions.

■ 10. Water rates or charges by a municipality are not classed as "taxes", so long as their use is limited to waterworks purposes enumerated in the statute, but if they are employed as a mere device to lessen burden of taxation for general governmental purposes, then such funds should be considered in the category of taxes. Himebaugh v. City of Canton, 145 Ohio St. 237, 61 N.E.2d 483, 485. And where a municipality establishes a system

of water works, its rates and charges to those who use water are imposed and collected not as a "tax", but as compensation for the commodity used. Town of Cicero v. Township High School District No. 201, 299 Ill.App. 237, 20 N.E.2d 114, 116; Preston v. Board of Water Commissioners, 117 Mich. 589, 76 N.W. 92. It is purely a contract relationship here between the township and individual residents.

11. The rates established here by the township for water service are confined to those who chose to make use of this service, and no charge is made to non-users in the water supply system district.

12. The defendant township now, in effect, seeks to avoid its responsibility for the payment of the debt it incurred, after having received the benefits of the contract it entered into. " 'The good faith of government should never be held less sacred than that of individuals.' Where the executed contract is neither malum in se nor malum prohibitum, but can only be avoided because of defects in the manner of its execution, the corporation cannot retain the benefits and deny its authority." Di Ponio v. City of Garden City, 320 Mich. 230, 237, 30 N.W.2d 849, 852.

13. Act 94 has been before the Supreme Court of the State of Michigan and its constitutionality attacked on various grounds. In the Di Ponio case, supra, the court said: "In Holland v. Clerk of Garden City, 299 Mich. 465, 300 N.W. 777, we held that the council of the city of Garden * * * had adopted Ordinance 46 pursuant to the provisions of Act No. 94, Pub.Acts 1933, as amended by Act No. 66, Pub.Acts 1935 and Act No. 2, Pub.Acts 1939, Comp. Laws Supp. 1940, § 2486-22 et seq., Stat. Ann.1940 Cum.Sup. § 5.2731 et seq., and had a right to make an extension of a water supply system without a vote of the electors; that to construct a sewage system is a project of public health and safety within

the sphere of activity contemplated by statute authorizing the issuance of self-liquidating revenue bonds by a city without submitting the proposition for the approval of the city's electors." Act 94 has been held constitutional in Young v. City of Ann Arbor, 267 Mich. 241, 255 N.W. 579; Morley Bros. v. Carrollton Township, 305 Mich. 285, 288, 9 N.W.2d 543; Di Ponio v. City of Garden City, supra; and Holland v. City of Garden City, 299 Mich. 465, 300 N.W. 777.

14. The defendants obtained the benefit of the bond issue sale only because they represented to the prospective bond purchasers that all necessary statutory requirements were complied with, and that they would abide by the undertakings they assumed with reference to payment and retirement of the bonds. The public purchased these bonds on the faith of such representations. The plaintiff bondholders have rights under the law which the courts will protect and enforce.

## Judgment

1. Defendants' motion to dismiss plaintiffs' complaint is denied.

2. Plaintiffs will have decree for appointment of receiver 60 days from the entry thereof, unless in the meantime the defendant township and its Township Board named herein fix, charge, and collect water rates sufficient to pay the defaulted bonds and coupons, and maintain the water rates at a level to retire the bonds and pay the accrued interest coupons as they mature, and present satisfactory evidence to the court within the 60-day period that a revision of the water rates had been accomplished within the spirit and letter of Act 94 and the Township Ordinance.

3. Decree to be presented for entry on notice 10 days from the date hereof.