MICHIGAN GAS & ELECTRIC CO. *v.* CITY OF DOWAGIAC.

1. MUNICIPAL CORPORATIONS—ELECTRIC PLANT—REVENUE BONDS—
APPROVAL OF ELECTORS.

Fourth class city has power to construct electric generating plant
and distribution system and issue bonds in payment therefor,
secured by mortgage thereon payable out of revenues only,
accompanied by franchise which in case of foreclosure of
mortgage would enable purchaser to operate thereunder for
period of 20 years, upon approval of three-fifths of electors
voting thereon, approval of three-fifths of property-qualified
electors voting thereon being unnecessary (Const. 1908, art. 3,
§ 4, as amended in 1932, art. 8, §§ 23–25).

2. APPEAL AND ERROR—CHANCERY—HEARING DE NOVO—WRONG REA-
SON FOR RIGHT RESULT.

Hearing in Supreme Court on Chancery appeal is *de novo* and if
trial court gave a wrong reason for a right result, the result,
not the reason, controls.

3. MUNICIPAL CORPORATIONS—REVENUE BONDS—BONDED INDEBTED-
NESS—CONSTITUTIONAL LAW—STATUTES.

The power of a municipality to acquire an authorized utility and
issue mortgage bonds, beyond the general limit of bonded in-
debtedness prescribed by law, does not impose any liability
upon the city if secured only upon the property and revenues
of such public utility including 20-year franchise to purchaser
in event of foreclosure and is not to be circumscribed by limit-
ing grant of power to make such incumbrance unless and until
bonded indebtedness, as otherwise prescribed by law, shall
have been exhausted (Const. 1908, art. 3, § 4, as amended in
1932, art. 8, §§ 23, 24; Act No. 39, Pub. Acts 1934 [1st Ex.
Sess.]).

4. EQUITY—DENIED ALLEGATION—PROBATIVE FORCE.

In suit heard solely upon bill and answer, allegation of bill that
notices of special election on bond issue for construction of
electric plant and distribution system were not posted in three
public places in each ward as required by statute, which was
denied by answer, *held*, to carry no probative force (1 Comp.
Laws 1929, § 1850).

5. MUNICIPAL CORPORATIONS—PUBLIC UTILITY—NOTICE OF SPECIAL
   ELECTION—CONTENTS—STATUTES.

   Statute as to special elections on proposed direct obligations to
   be incurred by a municipality in acquiring a public utility not
   being applicable to proposal to finance construction by means
   of assistance from Federal government secured by bonds pay-
   able from revenue and foreclosure sale of utility, notice of
   special election need not incorporate therein *in extenso* the
   details of Federal offer (Const. 1908, art. 8, § 24; 1 Comp.
   Laws 1929, § 2102).

6. SAME—INSTRUCTION BALLOTS—PROPOSALS AS TO ACQUISITION OF
   PUBLIC UTILITY AND GRANT OF A FRANCHISE.

   Instruction ballots on proposals to acquire municipal electric
   plant and distribution system and to grant a franchise to be
   included in mortgage given as security for bonds to be issued
   for such acquisition *held,* sufficient.

Appeal from Cass; Pugsley (Earl C.), J.  Sub-
mitted October 13, 1936.  (Docket No. 71, Calendar
No. 39,144.)  Decided December 28, 1936.  Rehear-
ing denied March 2, 1937.

Bill by Michigan Gas & Electric Company, a Mich-
igan corporation, against City of Dowagiac, a mu-
nicipal corporation, and others to restrain the carry-
ing out of a plan for acquiring and constructing an
electric generating plant and distribution system for
the City of Dowagiac.  Decree for plaintiff.  De-
fendants appeal.  Reversed.

*Carl D. Mosier (David Anderson, Sr.,* of counsel),
for plaintiff.

*Lewis W. James,* City Attorney *(Harold Good-
man,* of counsel), for defendants.

WIEST, J.  The city of Dowagiac is of the fourth
class.  The common council of the city, by resolu-
tion, accepted an offer of the United States, made

through the Federal Emergency Administration of Public Works, of aid in financing the construction of a diesel electric generating plant and distribution system at an estimated cost of $202,000. The plan involved issuance of bonds of the city, secured by a mortgage upon the generating plant and distribution system and revenues therefrom, accompanied by a franchise which, in case of foreclosure of the mortgage, would enable the purchaser to operate thereunder for a period of 20 years.

Plaintiff, a taxpayer in the city, filed the bill herein to enjoin the carrying out of the plan. The case was heard upon bill and answer and the first question is whether the city can issue the bonds, secured by the mortgage, and grant a franchise, without submission to, and affirmative action by, three-fifths of the voters casting their ballots and having the qualifications of electors who have property assessed for taxes or the lawful husbands or wives of such persons.

The common council, by resolution, first provided for submission of the proposals to the property-qualified electors and, by subsequent resolution, provided for submission to the general electors of the city, and provided that the proposal to acquire the plant and distribution system and the proposal to include a franchise in the mortgage, appear on ballots marked "taxpayers ballot" and "non-taxpayers ballot," and requiring that each person who offered to vote as a taxpayer or as the lawful husband or wife of such a taxpayer be requested to execute an oath before an election inspector, showing the status of such person as to being a taxpayer or not.

At a special election both propositions received an affirmative vote of more than three-fifths of the

general electors but less than three-fifths of the property-qualified electors voting thereon. The common council declared both propositions duly approved. The court decreed three-fifths of the property-qualified electors voting thereon was necessary to approval and restrained the city from proceeding otherwise.

Article 8, Constitution of 1908 relates to local government and section 23 thereof provides that:

"Subject to the provisions of this Constitution, any city or village may acquire, own and operate, either within or without its corporate limits, public utilities for supplying water, light, heat, power and transportation to the municipality and the inhabitants thereof."

Section 24 provides:

"When a city or village is authorized to acquire or operate any public utility, it may issue mortgage bonds therefor beyond the general limit of bonded indebtedness prescribed by law: Provided, That such mortgage bonds issued beyond the general limit of bonded indebtedness prescribed by law shall not impose any liability upon such city or village, but shall be secured only upon the property and revenues of such public utility, including a franchise stating the terms upon which, in case of foreclosure, the purchaser may operate the same, which franchise shall in no case extend for a longer period than twenty years from the date of the sale of such utility and franchise on foreclosure."

Section 25 provides:

"Nor shall any city or village acquire any public utility or grant any public utility franchise which is not subject to revocation at the will of the city or village, unless such proposition shall have first received the affirmative vote of three-fifths of the

electors of such city or village voting thereon at a regular or special municipal election; and upon such proposition women taxpayers having the qualifications of male electors shall be entitled to vote.''

Article 3 relates to the elective franchise and section 4 thereof (as amended in 1932) provides:

''Whenever any question is submitted to a vote of the electors which involves the direct expenditure of public money or the issue of bonds, only such persons having the qualifications of electors who have property assessed for taxes in any part of the district or territory to be affected by the result of such election or the lawful husbands or wives of such persons shall be entitled to vote thereon.''

The mentioned provisions operate in harmony. If the proposed municipal utility involves the direct expenditure of public money or the issue of bonds as an obligation of the city then such proposal must receive the approval required by article 3, § 4, Constitution of 1908 as amended.

The case at bar, however, does not involve the direct expenditure of public money or the issue of general obligating municipal bonds and falls within the grant of power and the method of approval as provided by article 8, §§ 23, 24, 25, Constitution of 1908.

The circuit judge was in error in holding that, in the instance at bar, the approval of the propositions by the general electors was not adequate.

This being a chancery appeal, and the hearing in this court *de novo,* if the circuit judge gave a wrong reason for a right result, then the result, and not the reason, controls.

In support of the result, plaintiff also contends that submission of the propositions was not accompanied by information to the electors as re-

quired by law, and also that the power to issue bonds limited to liquidation out of revenues of the utility does not exist, unless and until the legal bonding limit of the city has been exhausted.

The power of a municipality to acquire an authorized utility and the issuance of mortgage bonds, beyond the general limit of bonded indebtedness prescribed by law, does not impose any liability upon the city if secured only upon the property and revenues of such public utility, including the franchise, as provided by article 8, § 24, Constitution of 1908, and is not to be circumscribed by a holding not to grant the power unless and until the bonded indebtedness of the city, as otherwise prescribed by law, shall have been exhausted.

Counsel for plaintiff direct attention to Act No. 39, Pub. Acts 1934 (1st Ex. Sess.), relative to municipal bonds to be paid out of revenue, and claim that:

"By this act we have a legislative interpretation of the requirements of the amendment of article 3, § 4, of the State Constitution, and it is certainly the legislative idea that this amendment applies to bonds, which not only do not create any direct liability against the city, but do not even require a mortgage to be given upon the improvement itself, bonds which are payable only from the revenue. The legislature provides that such a proposition must be submitted to popular vote, and the voters' qualifications limited to taxpayers, or the lawful husbands or wives of taxpayers; in other words, the legislative interpretation and application is entirely in accord with plaintiff's contention in this case, and entirely contrary to the contention of the city of Dowagiac."

The legislature was not engaged in interpreting the constitutional provision, and we cannot employ the thought presented.

The bill alleged that notices of the special election were not posted in three public places in each ward as required by 1 Comp. Laws 1929, § 1850. This was denied by the answer and, inasmuch as the hearing was solely upon bill and answer, the allegation carries no probative force. The bill also alleged that the public notice of the special election did not carry a copy of the proposed franchise nor did the council submit to the electors the question of issuing bonds, as proposed in the Federal offer, and the question of raising the amount required for the purposes proposed, as required by 1 Comp. Laws 1929, § 2102.

The mentioned statute has no applicability to the instance at bar, but relates to proposed direct obligations to be incurred by a municipality in acquiring a public utility.

It was not necessary in the notice of the special election to incorporate therein *in extenso* the details of the Federal offer.

The instruction ballots stated as proposition No. 1:

"Proposal to acquire diesel electric generating plant and distribution system for supplying light and power to the city of Dowagiac.

"Shall the city of Dowagiac acquire by purchase or construction, or both, a diesel electric generating plant and distribution system for supplying the city of Dowagiac and its inhabitants with electric light and power?"

And as proposal No. 2:

"Proposal to grant a franchise to be included in the mortgage to be given as security for bonds to be issued to acquire a diesel electric generating plant and distribution system.

"Shall there be included in the mortgage to be given as security for bonds to be issued to pay the cost of acquiring a diesel electric generating plant and distribution system, a franchise to be granted by the city of Dowagiac to the purchaser on foreclosure of said mortgage to operate said diesel electric generating plant and distribution system, for a period of 20 years from the date of said foreclosure?"

This was followed by a printing of the proposed franchise.

Plaintiff made no case calling for the restraint granted, and the decree is reversed and the bill dismissed, with costs to defendants.

NORTH, C. J., and FEAD, BUTZEL, BUSHNELL and SHARPE, JJ., concurred. POTTER and TOY, JJ., did not sit.