LAKE SUPERIOR DISTRICT POWER CO. *v.* CITY OF
BESSEMER.

1. MUNICIPAL CORPORATIONS—APPROVAL OF THREE-FIFTHS MAJORITY
    —BONDS ISSUABLE.

    Approval of three-fifths of electors voting for issuance of first
    mortgage bonds for constructing a municipal light plant and
    distributing system would not be sufficient votes to authorize
    the issuance of general liability bonds but merely issuance of
    bonds secured by mortgage of property acquired out of pro-
    ceeds of the sale of bonds (Const. 1908, art. 8, §§ 23–25; 1
    Comp. Laws 1929, §§ 2102, 2690–2702, as amended).

2. SAME—INJUNCTION—TIME TO SUE.

    A taxpayer need not wait until a city actually executes a mortgage to raise funds for erection of a municipal light plant and distributing system before bringing suit to enjoin its erection.

3. SAME—INJUNCTION AS TO MORTGAGE COVERING OTHER PROPERTY.

    After vote of but three-fifths of electors for first mortgage bonds for constructing a municipal light plant and distributing system, city would be permanently enjoined from mortgaging any property except such as may be acquired by the use of the proceeds of the proposed loan (Const. 1908, art. 8, §§ 23–25; 1 Comp. Laws 1929, §§ 2102, 2690–2702, as amended).

4. SAME—FEDERAL GRANT AND LOAN—DELEGATION OF POWERS.

    City's acceptance of terms and conditions of Federal government's offer to aid in financing construction of municipal light plant and distributing system would not be an unlawful delegation of power because of detailed restrictions upon the construction, use of money, and other matters not different from those usually found in private contracts relative to such matters.

5. SAME—GIFTS—STATUTES—GRANT FROM FEDERAL GOVERNMENT.

    Statute permitting municipalities to accept gifts for public purposes *held*, broad enough to authorize acceptance of grant of money from Federal government (1 Comp. Laws 1929, § 2746).

6. SAME—ISSUANCE OF LESS AMOUNT OF BONDS THAN AUTHORIZED.

    Approval by three-fifths of voters of $135,000 bond issue authorized $103,000 bond issue and acceptance of grant of $84,500, as issuance of a lesser amount of bonds was not contrary to expressed will of electorate and acceptance of grant imposed no additional obligations to those authorized by the voters (Const. 1908, art. 8, §§ 23–25).

7. CONSTITUTIONAL LAW—CONSTRUCTION—MUNICIPAL CORPORATIONS.

    Provisions of Constitution relative to municipal ownership of public utilities must be read together (Const. 1908, art. 8, §§ 23–25).

8. COSTS—PUBLIC MATTER—TAXPAYER'S SUIT TO ENJOIN CONSTRUCTION OF MUNICIPAL PUBLIC UTILITY.

    Costs in a public matter being discretionary, none are awarded upon modification of taxpayer's suit to enjoin construction and financing of municipal light plant and distributing system.

Appeal from Gogebic; opinion by Driscoll (George O.), J.; decree by Stone (John G.), J., presiding. Submitted January 11, 1939. (Docket No. 74, Calendar No. 40,311.) Decided April 4, 1939.

Bill by Lake Superior District Power Company, a Wisconsin corporation, against City of Bessemer, a municipal corporation, and others to restrain the construction and financing of an electric plant and for other relief. Bill dismissed. Plaintiff appeals. Modified and affirmed.

*Charles M. Humphrey* and *Charles M. Humphrey, Jr. (Oxtoby, Robison & Hull* and *Allan T. Pray,* of counsel), for plaintiff.

*Michael E. Nolan (Charles P. O'Neil* and *Edmund J. Stafford,* of counsel), for defendants.

BUSHNELL, J. Plaintiff, a utility corporation, engaged in the business of generating and distributing electrical energy, filed a bill of complaint to restrain the city of Bessemer, its common council, and officers from proceeding with the construction and financing of an electric plant and distributing system in the city of Bessemer. Plaintiff's complaint was based upon its rights as the holder of a nonexclusive franchise and as a taxpayer; being required to elect at the trial, it stood upon its rights as a taxpayer. The case was tried before the late Hon. George O. Driscoll, circuit judge, who filed a written opinion. The decree was entered by Judge Stone after Judge Driscoll's death in conformity with his opinion. The decree dismissed plaintiff's bill of complaint without costs and continued the temporary injunction previously issued, pending appeal to this court.

On September 13, 1932, there was submitted to the electors of the city of Bessemer a proposition for the issuance of first mortgage bonds in a sum not to exceed $135,000 for the purpose of constructing a municipal light plant and distributing system. See article 8, § 24 of the Constitution, and 1 Comp. Laws 1929, §§ 2690 to 2702, inclusive, as amended, (Stat. Ann. §§ 5.3171 to 5.3183). There were 1,547 votes cast at the city election, 1,025 of these being "yes" votes and 522 "no" votes. The proposition was, therefore, not approved by a two-thirds vote but only by a three-fifths vote. See 1 Comp. Laws 1929, § 2102 (Stat. Ann. § 5.1897), and *Michigan Gas & Electric Co.* v. *City of Dowagiac*, 278 Mich. 522. On September 19, 1932, the common council adopted a resolution authorizing an application to the reconstruction finance corporation for a loan not to exceed the above amount. The application remained in abeyance from 1932 until it was acted upon in 1937 by the public works administration.

The original application recites that:

"The site for the power plant to be erected is now owned by the city and the present water pumping plant is located thereon. It is proposed to enlarge the present building and house both plants under the structure as shown in blue prints in exhibit 2. The location is ideal and has the further advantage that the same operators can operate both pumping and power plant, and further the water supply is located on the same premises."

The application proposed that:

"Full and adequate security for the loan will be given through the first mortgage bonds which will be issued, which bonds will be secured by the plant, distribution system and a 20-year franchise stating

the terms upon which the mortgagees can operate in case of foreclosure.''

Under date of October 1, 1937, the city clerk of Bessemer was advised in a letter signed by the State director of the Federal emergency administration of public works that the United States offered ''to aid in financing the construction of the above project by making a loan and grant.''

The government offered to aid the city by making a grant in the amount of 45 per cent. of the cost of the project upon completion, as determined by the administrator, but, in any event, not to exceed the sum of $84,500, and by purchasing ''negotiable, special obligation, first mortgage electric light system, revenue, serial, coupon bonds'' in the aggregate principal amount of $103,000. The offer provided that these bonds were to be—''secured by a closed first mortgage upon the real estate and chattel property of said system including a franchise to the purchaser at foreclosure to operate said system for a period of 20 years after date of the sale of the system upon foreclosure of said mortgage.''

Attached to the offer was a document entitled, ''Terms and Conditions (PWA Form No. 230),'' dated September 15, 1937, and consisting of 31 printed pages in the record before us. This document contains many detailed restrictions upon the construction, use of the money, et cetera, to the extent that plaintiff characterizes its proposed acceptance as an ''unlawful delegation of its legislative powers by the city.''

Plaintiff argues that the application to the reconstruction finance corporation and the proposal by the public works administration must be read together and that they evidence an intent by the city

to mortgage its present waterworks plant as part of the security for the bonds to be issued in connection with the municipal light plant project. Defendant city categorically denies such an intent.

The decree contains a finding that the city, on the affirmative vote of three-fifths of its electors, was and is authorized by the Constitution and statutes to acquire, own, and operate a public utility for supplying light, et cetera, and issue bonds therefor beyond the general limits of its bonded indebtedness, provided—"that such bonds do not impose any liability upon such city but are secured solely by a mortgage on the property and investments of the said public utility; that the proposed acquisition of said lighting plant by defendant, city of Bessemer, has been approved by the vote of more than three-fifths of the electors of said city but not by the vote of two-thirds of said electors; that said proposed mortgage will not cover any property now owned by the city of Bessemer, nor will there be any pledging or investing of any previously owned city assets; that the mortgage bonds proposed to be issued by the defendant, city of Bessemer, in payment for said plant will be secured solely by the property and revenue of said plant and will not impose any liability on said defendant, city of Bessemer, and that if the mortgage securing said mortgage bonds shall cover any property now owned by the city of Bessemer, or if there shall be any pledging or investment of any previously owned city assets, plaintiff will hereafter have ample opportunity to complain thereof."

In the record is a sketch showing the "proposed municipal power plant" which, if adhered to, would include the use of a portion of the present water pumping station building. The original application

to the reconstruction finance corporation provided for the issuance of first mortgage bonds on the "plant." The use of this word "plant" without other descriptive language may be ambiguous. Whether or not acceptance of the present proposal of the government, through the public works administration, requires the issuance of mortgage bonds on the pumping station or any other property now owned by the city which may be used as a site for the proposed electric plant is difficult to determine. It is enough to say that the proposal submitted to the people was not passed by sufficient votes to authorize the issuance of general liability bonds. If, as is claimed by the city, the offer of a grant by the government and its proposed purchase of bonds is confined solely to those secured by the mortgage of property acquired out of proceeds of the sale of these bonds, the transaction is within the language of article 8, §§ 23–25, of the Constitution of 1908. *Young* v. *City of Ann Arbor,* 267 Mich. 241, *Block* v. *City of Charlevoix,* 267 Mich. 255, *Gilbert* v. *City of Traverse City,* 267 Mich. 257, *Attorney General, ex rel. Eaves,* v. *State Bridge Commission,* 277 Mich. 373, and *Michigan Gas & Electric Co.* v. *City of Dowagiac, supra.* See, also, annotations in 72 A. L. R. 687, and 96 A. L. R. 1385.

It is not enough that the decree provides—"if there shall be any pledging or investment of any previously owned city assets, plaintiff will hereafter have ample opportunity to complain thereof."

Plaintiff's action was properly brought and it is not required to wait until the city actually executes the mortgage before it may complain. See *Rood* v. *City of Detroit,* 256 Mich. 547, *Bacon* v. *City of Detroit,* 282 Mich. 150. The issue is presented squarely and should be met. Accepting the city's denial of

any intent to mortgage property now owned, the decree should be modified to provide that the city be permanently enjoined from mortgaging any property except such as may be acquired by the use of the proceeds of the proposed grant and loan. So modified, plaintiff's rights are protected and the government can make its grant and purchase the proposed bonds within the provisions of the Constitution and the statutes of this State.

The argument is presented that the acceptance of the terms and conditions of the offer involves an unlawful delegation of its legislative powers by the city. As indicated, the proposed contract goes into great detail and contains many items too numerous to be discussed in this opinion. They have been examined and, in many instances, they are no different than those which would usually be found where the underwriting is by private concerns. Appellant cites *Arkansas-Missouri Power Co.* v. *City of Kennett* (C. C. A.), 78 Fed. (2d) 911, where the court applied the law of Missouri and held that the contract provided for an unlawful delegation of power. There is, however, authority to the contrary, notably *Greenwood County* v. *Duke Power Co.* (C. C. A.), 81 Fed. (2d) 986, where the court said, in construing a public works administration contract that was modified subsequent to the *Kennett* decision, that the conditions were those which any banker would specify in such case. *Alabama Power Co.* v. *Ickes,* 302 U. S. 464 (58 Sup. Ct. 300), is helpful, although decision was planted upon a determination of the right of the power company to bring its action. The supreme court quoted at length from the findings of the district court involving questions of delegation of power which, it was said, "were not questioned by the court below; and since they are not without

substantial support in the evidence, we accept them as unassailable.'' See, also, *Steward Machine Co. v. Davis, Collector of Internal Revenue,* 301 U. S. 548 (57 Sup. Ct. 883, 109 A. L. R. 1293). This case involved a suit to recover a tax imposed by the Federal social security act and held that a sovereign State may contract without derogating its sovereign powers, and, in effect, that the contracting State had the discretion of accepting or rejecting conditions that were imposed by the Federal government.

If the acceptance of the terms and conditions of the government's offer be held an unlawful delegation of power, one might well ask how and under what terms can a municipality lawfully contract for the issuance of bonds for the construction of a public utility. There seems to be no controlling decision in this State.

It is further argued that the city lacks the power under its charter to accept the proposed public works administration's grant of $84,500. A grant was involved in the *Dowagiac Case, supra,* but the precise question was not urged or included in the decision. 1 Comp. Laws 1929, § 2746 (Stat. Ann. § 5.3421), contains language sufficiently broad to authorize the acceptance of the grant. This statute reads as follows:

"Any city, village, township or other municipal corporation in the State of Michigan may receive, own and enjoy any gift of real or personal property, made by grant, devise, bequest or in any other manner, for public parks, grounds, cemeteries, public buildings and other public purposes, whether made directly or in trust, subject to such conditions, limitations and requirements as may be provided in such grant, devise, bequest or other instrument.

No such gift shall be invalid because of any informality in the instrument evidencing such gift, if the intent can be determined therefrom, nor by reason of its contravening any statute or rule against perpetuities. All such gifts heretofore made, either by grant, devise, bequest or in any other manner are hereby declared valid, though they violate any statute or rule against perpetuities, the same as if this act had been in effect when made."

It is argued that the vote in 1932 cannot be used as authorization for the acceptance of the government's proposal of 1937.

It is true the proposal was submitted to the people for a bond issue of $135,000 and that the present plan provides for an issue of only $103,000 and a grant of $84,500. The issuance of a lesser amount of bonds is not contrary to the expressed will of the electorate and the acceptance of the grant does not impose any additional obligations upon the city beyond those authorized by the voters. It is necessary to read article 8, §§ 23–25, of the Constitution together. *Stanhope* v. *Village of Hart,* 233 Mich. 206. There is nothing in these sections to prevent the city from taking advantage of the better proposition.

Costs in a public matter being discretionary, in view of the circumstances no costs will be awarded. A modified decree may be entered here in conformity with this opinion. It is so ordered.

Butzel, C. J., and Sharpe, Potter, Chandler, North, and McAllister, JJ., concurred with Bushnell, J. Wiest, J., concurred in the result.