GENTZLER *v.* CONSTANTINE VILLAGE CLERK.

1. MUNICIPAL   CORPORATIONS—BONDS—CONSTITUTIONAL   LAW—
COURTS.

   Bonds issued by a village, which assumed it had power to issue same under a provision of the Constitution which the Supreme Court had theretofore held was self-executing, *held,* valid, notwithstanding decision subsequent to issuance of bonds reversing the former holding as to provision of Constitution (Const. 1908, art. 8, § 24).

2. COURTS—SUBSEQUENT OVERRULING DECISIONS—IMPAIRMENT OF
   CONTRACTS.

   While generally the decision of a court of supreme jurisdiction
   overruling a former decision is retrospective in its operation,
   where a constitutional or statute law has received a given con-
   struction by the courts of last resort and contracts have been
   made and rights acquired under and in accordance with such
   construction, such contracts may not be invalidated, nor vested
   rights acquired under them impaired, by a change of construc-
   tion made by a subsequent decision.

3. MUNICIPAL CORPORATIONS—VILLAGE BONDS.

   Bonds issued by village without matter having been submitted
   for approval of the electors *held,* valid, where village then
   assumed provision of Constitution under which issuance was
   made was self-executing in reliance upon decisions of Supreme
   Court theretofore rendered, and issue was subsequently ratified
   by charter amendment (Const. 1908, art. 8, § 24).

4. SAME—CHARTERS—PUBLIC UTILITIES—EXTENT OF MORTGAGE
   LIENS.

   A municipality which has appropriate charter provisions is vested
   with the power to secure payment of mortgage bonds on a
   given utility by making such obligation a lien not only upon
   the improvement, enlargement or extension and the revenues
   thereof for which the proceeds of the issue are to be used,
   but a mortgage lien may be imposed therefor as well upon
   the already existing utility and revenues to be derived there-
   from (Const. 1908, art. 8, § 24).

5. SAME—CONSTRUCTION OF CONSTITUTION—PUBLIC UTILITIES.

   The three sections of the Constitution pertaining to municipal
   ownership of public utilities must be read together (Const.
   1908, art. 8, §§ 23–25).

6. SAME—PUBLIC UTILITY—MORTGAGE BONDS.

   The issuing of mortgage bonds is an integral part of the pur-
   chase of a public utility by a municipal corporation (Const.
   1908, art. 8, §§ 23–25).

7. SAME—PUBLIC UTILITY—MORTGAGE BONDS.

   The terms of municipal mortgage bonds are an essential part
   of the purchase price of a public utility (Const. 1908, art. 8,
   §§ 23–25).

8. SAME—CHARTERS—CONSTITUTIONAL LAW.

   A municipal charter or ordinance provision which contravenes
   the Constitution is invalid and inoperative.

9. SAME—PUBLIC UTILITY—MORTGAGE BONDS—APPROVAL OF ELEC-
TORS.

   The issuance of mortgage bonds for the acquisition or extension
   of a public utility by a municipality is a proposition which
   must be submitted to the electors thereof and approved by
   three-fifths of the electors voting thereon (Const. 1908, art. 8,
   §§ 23–25).

10. COSTS—PUBLIC QUESTION—MUNICIPAL BONDS.

   No costs are allowed in mandamus proceeding to determine
   validity of municipal bond issue, a public question being in-
   volved.

Mandamus by Fred W. Gentzler, president of
Village of Constantine, and others against Harold E.
Smith, village clerk, to compel defendant to sign
bonds and affix village seal thereto.   Submitted
March 4, 1948.   (Calendar No. 43,998.)   Writ denied
April 5, 1948.   Rehearing denied May 18, 1948.

*Berry, Stevens, Barbier & Evely (Claude H.
Stevens, of counsel), for plaintiffs.*

*Franklin P. Bush,* for defendant.

*Miller, Canfield, Paddock & Stone,* and *Raymond J.
Kelly,* Corporation Counsel, *Paul T. Dwyer,* Chief
Assistant Corporation Counsel, and *John G. Dunn,*
Assistant Corporation Counsel, for City of Detroit,
*amici curiae.*

NORTH, J.   This is a mandamus proceeding in
which plaintiffs seek to have defendant Smith, as
clerk of the village of Constantine, directed to exe-
cute, as required by statute (1 Comp. Laws 1929,
§ 1756 [Stat. Ann. § 5.1493]), an issue of $216,000
electric light and power system mortgage bonds
which had been authorized by passage of a village
ordinance.   The clerk's refusal to execute these
bonds is based in part upon the following conten-
tions.

(1) That $98,000 of the issue is to refund that amount of electric light and power mortgage bonds issued in 1937 and 1939, which bonds are void because they were issued without lawful authority, and therefore the proposed issue for refunding the 1937 and 1939 bonds would be void, or at least not lawfully authorized.

(2) That the proposed issue of bonds purports to mortgage not only the contemplated improvements, enlargements and extensions to the village electric light and power system and the additional revenues derived therefrom, but also to mortgage its present electric system and the revenues derived from it. Defendant asserts that the village is without power to so encumber its present plant and the revenues therefrom.

Plaintiffs are the president and members of the council of the village of Constantine which was organized under the 1895 general village act. 1 Comp. Laws 1929, § 1465 *et seq.* (Stat. Ann. § 5.1201 *et seq.*). As noted later herein, the village charter was amended in September, 1947, effective October 6, 1947. In 1937, the village acquired an electric utility through the issuance of mortgage bonds in the amount of $107,000, dated June 1, 1937. In 1939, the village issued $38,000 additional mortgage bonds dated April 1, 1939, for the purpose of extending and expanding this municipal utility. At the time of the issuance of the 1937 and 1939 bonds there was no statutory or charter provision which authorized the village of Constantine to issue the above bonds. However, the village assumed it had power to issue the bonds under article 8, § 24, of the Constitution (1908), which this Court in 1926 had held was self-executing. See *Michigan United Light & Power Co. v. Village of Hart,* 235 Mich. 682.

The first question presented is this: Are the bonds issued in 1937 and 1939 valid obligations? Under

the authorities about to be noted the answer must be in the affirmative. At the time these bonds were issued by our holding in *Michigan United Light & Power Co.* v. *Village of Hart, supra,* article 8, § 24, of the Constitution, was judicially determined to be self-executing as to a village organized as is the village of Constantine. Even if it be assumed, as counsel herein seem to agree, that by our later decision in *Sault Ste. Marie City Commission* v. *Sault Ste. Marie City Attorney,* 313 Mich. 644 (1946), we overruled our earlier (1926) holding in the *Hart Case, supra,* nonetheless the validity of the Constantine village mortgage bonds issued in 1937 and 1939 must be determined in the light of the applicable law as judicially announced in the 1926 *Hart* decision. In other words, since those bonds were issued during a period in which article 8, § 24 of the Constitution, was judicially held to be self-executing, their validity must be determined under that construction of the law.

"The general principle is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former decision is bad law, but that it never was the law. *To this the courts have established the exception that where a constitutional or statute law has received a given construction by the courts of last resort and contracts have been made and rights acquired under and in accordance with such construction, such contracts may not be invalidated, nor vested rights acquired under them impaired, by a change of construction made by a subsequent decision.*" 14 Am. Jur. p. 345.

The law, as just above stated, has been approved in this jurisdiction in the following cases: *Metzen* v. *Department of Revenue,* 310 Mich. 622; *Donohue* v. *Russell,* 264 Mich. 217. In the latter case we quoted with approval the following:

" 'The effect of overruling a decision and refusing to abide by the precedent there laid down is retrospective and makes the law at the time of the overruled decision as it is declared to be in the last decision, *except in so far as the construction last given would impair the obligations of contracts entered into or injuriously affect vested rights acquired in reliance on the earlier decisions.'* * * * 15 C. J. p. 960, § 358.''

We are mindful that as to $38,000 of these bonds issued in 1939, the issuance thereof was not submitted to the electors for their approval. Nonetheless as article 8, § 24, of the Constitution (1908), was at that time judicially construed, it was self-executing, and for that reason approval of the bond issue by the electors was not required. While perchance it is not essential to decision of the issue now under consideration, it may be noted in connection therewith that in 1947 the village charter was amended, and the amendment included the following:

"The previous acquirement, improvement, enlargement and extension of such a utility in the village and the issuance of mortgage bonds therefor, are hereby ratified and confirmed. The village may issue mortgage refunding bonds for the purpose of refunding mortgage bonds issued either before or after the effective date of this section, and such mortgage refunding bonds shall be valid obligations, notwithstanding the fact that the original bonds may have been issued without first adopting a charter amendment authorizing such issuance.''

As indicated above, the bonds issued by the village of Constantine in 1937 and 1939 are valid subsisting obligations in accordance with the terms thereof.

The second issue presented in the instant case may be stated as follows: Can the payment of mortgage bonds issued for the improvement, enlargement or

extension of an existing municipal utility be secured by a pledge of or lien upon not only such improvement, enlargement and extension and the revenues therefrom, but also by a pledge of or lien upon the existing utility and the revenues therefrom? Plaintiffs say "yes;" defendant says "no."

We are of the opinion that by necessary inference from the context of article 8, § 24, of the Constitution (1908), a municipality which has appropriate charter provisions is vested with the power to secure payment of the mortgage bonds on a given utility by making such obligation a lien not only upon the improvement, enlargement or extension and the revenues thereof for which the proceeds of the bond issue are to be used, but the municipality may also for that purpose give a mortgage lien upon the already existing utility and revenues to be derived therefrom. Touching mortgage bond issues of the type herein involved, article 8, § 24, provides they "shall be secured only upon the property and revenues of such public utility, *including a franchise* stating the terms upon which, in case of foreclosure, the purchaser may operate the same" in the event of foreclosure. Were it possible to market bonds the payment of which were secured only by the improvement and extension of the utility, this perplexing question would at once arise: In case of foreclosure how would it be possible for the future owners to exercise a franchise which pertained only to the utility's improvements or extensions covered by the mortgage which secured payment of the bonds? Ordinarily such a security would be quite valueless. This cannot be answered by saying that section 24 contemplated only the issuing of mortgage bonds on the utility for its original cost, and contemplated no provision for subsequent improvements, modifica-

tions or extensions.  In the light of every day experience, such a narrow construction of section 24 would obviously be altogether too restrictive.

In construing a very similar provision, the court in *City of Middletown* v. *City Commission of Middletown,* 138 Ohio St. 596, 606 (37 N. E. [2d] 609), said:

"May a municipality in issuing mortgage utility bonds under section 12, article 18 of the constitution, secure such bonds not only by the property acquired or constructed with the proceeds from the sale of such bonds, but also by other property composing a part of the utility?   *   *   *

"If the contention were to be accepted that such mortgage bonds may cover only that part of a utility actually financed therewith, a situation would arise impairing the value of the constitutional provision, vitiating its purpose and making it difficult if not impossible to find a market for the bonds.

"Section 12 speaks for itself.  It is not ambiguous, is self-sufficient and self-contained, and an impartial reading of it leads to the conclusion that it authorizes a municipality to secure the mortgage bonds described by the inclusion of all the property and revenues of the utility, present and future."

In *Ritchie* v. *City Council of Harrisville,* 291 Mich. 415, the city sought to issue bonds, the payment of which was secured by a pledge of the revenue of a municipal water supply and distribution system, the cost of which was to come, in part, from the general funds of the city and the proceeds of its general obligation bonds, and also from a Federal grant.  In sustaining the validity of such bonds, while perchance it was not essential to decision, we said:

"We can see no distinction between the case at bar and a case where an addition is made to an existing public project and the entire revenues thereof,

after the addition is completed, are to be used in payment of principal and interest of bonds issued under the provisions of the cited statutes.''

It would seem there is little room for distinction between pledging the entire revenues and pledging the entire utility. While the exact issue under consideration was not therein raised, in *Consumers Power Co.* v. *City of Allegan,* 248 Mich. 34, we sustained the right of the municipality to issue mortgage bonds covering the entire utility notwithstanding $185,000 of the expenditure was from the proceeds of general obligation bonds, and $255,000 from an issue of mortgage bonds. Clearly, in so doing, the payment of the mortgage bonds was secured by property other than that which was paid for by the mortgage bond loan.

A case in this field of the law is reported in *Warden* v. *City of Grafton,* 125 W. Va. 658, 668 (26 S. E. [2d] 1). Therein the court said:

''It might be contended that section 22 limits the lien to only 'such municipal public works acquired or constructed under the provisions of this act.' We think, however, that this construction would defeat the whole intention and purpose of the statute. If the lien is to attach only to such part of the public works as shall have been constructed from the proceeds of the revenue bonds, then in case the bonds were issued for the enlargement or improvement of any such works, the lien would be only on an undetachable and probably unascertainable portion of the structure, and therefore would be utterly worthless. * * * Even in the case of a building wholly constructed from revenue funds upon land otherwise acquired, the lien would be on the building but not on the land and, therefore, of little or no value.''

In support of his contention defendant cites and relies much upon *Lake Superior District Power Co.*

v. *City of Bessemer,* 288 Mich. 455. That case is clearly distinguishable from the one at bar. In the *Bessemer Case* it was charged that the city, incident to financing construction of an electric plant and distribution system proposed ''to mortgage its present waterworks plant as part of the security for the bonds to be issued in connection with the municipal light plant project.'' Notwithstanding the city denied an intention so to do, under the circumstances of that case the city was enjoined from mortgaging its already owned and separate utility—its waterworks plant—to secure payment of bonds issued incident to the construction and financing of a separate utility—*i.e.,* an electric plant and distributing system. No such issue attends the instant case.

Our conclusion is that by proper procedure the village of Constantine has the power to issue mortgage bonds for the improvement, enlargement and extension of its existing electric utility, and that the payment of such mortgage bonds may be secured by a pledge of or a lien upon the whole of such electric utility and the revenues derived therefrom.

Notwithstanding decision of the instant case turns upon a question not hereinbefore considered, we have disposed of the foregoing issues in order that interested parties may be advised relative thereto incident to any further action looking to the consummation of this mortgage bond issue.

Defendant makes this further contention in justification of his refusal to execute the bonds in question. He asserts that the approval of the electors is a prerequisite to the issuance of these mortgage bonds. Plaintiffs take the opposite view. The proposed bond issue has not been submitted for approval of the electors. The controversy in the instant case seems to narrow down as to whether under article 8, §§ 23–25, of the Constitution (1908), particularly under section 25, the approval of three-

fifths of the electors is requisite to the validity of a mortgage bond issue of the type here in suit.

It is plaintiffs' contention that such approval is not necessary; that there is neither statutory nor charter provision requiring such approval, and that under the constitutional provisions such approval is required only (1) as to acquiring such utility and (2) as to granting the franchise included in the mortgage; but that approval by the electors as to issuing mortgage bonds is not required by the Constitution.

In support of their position plaintiffs cite and draw inferences from the following cases. *Stanhope* v. *Village of Hart,* 233 Mich. 206; *Michigan Gas & Electric Co.* v. *City of Dowagiac,* 278 Mich. 522; and *Lake Superior District Power Co.* v. *City of Bessemer, supra.* We find nothing in any of the cited cases which justifies the inference plaintiffs seek to draw, *i.e.,* that as to issuance of mortgage bonds approval of three-fifths of the electors voting is not required. That issue was not presented in or passed upon in any of the decisions just above cited. But we have said that article 8, §§ 23–25, of the Constitution (1908), must be read together. *Lake Superior District Power Co.* v. *City of Bessemer, supra.* When so read the conclusion is quite irresistible that issuing the mortgage bonds is necessarily an integral part of the purchase of the public utility. The terms of the bonds are an essential part of the purchase price of the utility. The electors have a real interest in the amount of such bonds, the rate of interest they bear, et cetera. The Constitution (1908), art. 8, § 25, in part provides: "Nor shall any city or village acquire any public utility  *  *  *  unless such *proposition* shall have first received the affirmative vote of three-fifths of the electors of such city or village voting thereon." The use of the word "proposition" in

the above quoted constitutional provision is quite indicative of the meaning intended by the framers of the Constitution. Fair construction leads to the conclusion that the "proposition" which must receive "the affirmative vote of three-fifths of the electors of such city, or village voting thereon" includes the matter of issuing the mortgage bonds. The construction which plaintiffs would place upon the pertinent constitutional provisions, when read together, is altogether too narrow and we think unjustifiable. In so concluding, we are mindful that the 1947 amendment to the Constantine village charter includes the following:

"Any issue of mortgage bonds may at the discretion of the council, be in an amount sufficient to refund outstanding mortgage bonds relating to such utility and also to make improvements, enlargements and extensions thereto."

But the foregoing provision is immediately followed by these words of limitation:

"The powers herein granted to the village may be exercised by the village council except where by State constitution or statute, such powers are lodged in the electors."

In any event, a charter provision or an ordinance which contravened the Constitution would be invalid and inoperative. In part the headnote to *Stanhope* v. *Village of Hart, supra,* reads: "where *a proposed mortgage* and franchise have not been submitted to the electors, erection of a proposed public utility may be enjoined by taxpayers of the municipality." Our conclusion is that notwithstanding the contemplated $216,000 mortgage bond issue was purportedly authorized by an ordinance passed by the Constantine village council, it is still requisite to the

validity of such bond issue that it should be submitted to a vote of the electors and be authorized by at least a three-fifths vote of the electors voting thereon.

For the reason hereinbefore indicated plaintiffs' application for mandamus is denied, but without costs since a public question is involved.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, DETHMERS, BUTZEL, and CARR, JJ., concurred.