737 N.W.2d 513 (2007)
275 Mich. App. 47
In re ESTATE of James W. MILTENBERGER, Deceased.
Susan Eifler, Personal Representative of the Estate of James W. Miltenberger, Deceased, Appellee, and
Sharon Miltenberger, Petitioner-Appellee,
v.
Sandra Swartz, Respondent-Appellant.
Docket No. 270716.
Court of Appeals of Michigan.
Submitted December 4, 2006, at Lansing.
Decided March 27, 2007, at 9:05 a.m.
Released for Publication August 15, 2007.
*514 Mumford, Schubel, Norlander, Macfarlane & Barnett, P.L.L.C. (by Jeffrey A. Schubel), Battle Creek, for the petitioner.
Kreis, Enderle, Callander & Hudgins, P.C. (by J. Ryan Conboy and Michael J. Toth), Kalamazoo, for the respondent.
Before: MARKEY, P.J., and SAAD and WILDER, JJ.
PER CURIAM.
This case presents the question whether the dower statute, MCL 700.2202(2)(c),[1] *515 denies respondent the equal protection of the laws. We hold that it does not.

I
James Miltenberger was married to petitioner, Sharon Miltenberger. Respondent Sandra Swartz, was James's child from a previous marriage. James Miltenberger died in 2004.
Petitioner sought to take her statutory dower interest in certain property her husband owned before his death, MCL 700.2202(2)(c), in lieu of taking under the decedent's will, which left her nothing. Respondent filed a motion for summary disposition under MCR 2.116(C)(8) and (C)(10) in which she challenged the constitutionality of the dower statute on equal protection grounds. Respondent argued that the dower statute discriminated in favor of women and against men. The probate court rejected respondent's constitutional challenge. It reasoned, in pertinent part:
Concerning the constitutionality, this Court is going to reluctantly decline to make dower unconstitutional. . . . I'm going to give deference to the legislature in this particular matter. Number one, I think that certainly dower serves or can be seen to serve an important governmental objective [,] that of protecting widows. I guess anecdotally most property, especially business property, is owned or in the name of men, and I think that one of the reasons for dower is that very inequality which we see sometimes in our society. I believe that still even though it's a changing norm, women, a lot of times, do stay home. They raise the children. The men are the ones who are the professionals or breadwinners in the family, and as part of this, they also are the ones who hold the title to the property. And I think that the legislature certainly can see the fact that a woman stays home and does the important work of raising the family without compensation, without learning a skill otherwise, that she deserves some protection that would not also go to a man.
Again, this is anecdotal evidence, and that's why I have such a reluctance . . . to sit here today and declare this statute to be unconstitutional, because quite frankly, . . . it would not hurt my feelings to see dower go. Dower historically has always been here in Michigan, and . . . it was re-adopted when the Estate[s] and Protected Individuals Code [EPIC] was adopted back in nineteen, I believe, ninety-nine. In fact, it was specifically considered because I do not believe that there is any dower in the Uniform Probate Code which was used as a model for EPIC. I know that dower was not submitted as the draft before the legislature by the Probate and Estate Planning Council, which was the major sponsor of that legislation, because I was a member and an officer in that council. I know that, in fact, the adoption of EPIC was delayed until the legislature or certain legislators had *516 dower placed back in that legislation, and then it was adopted.
I believe that this is . . . something which is peculiar to the legislature as elected governmental officials to determine whether or not this is an important government objective to protect widows in our society. Certainly I believe that dower . . . is substantially related to the achievement of that particular objective if there is a determination that widows somehow are in a  a special class that needs this particular protection.
So I am going to, once again, defer to the legislature, and I'm going to decline to declare dower to be unconstitutional. . . .
The probate court denied in part respondent's motion for summary disposition, holding that the dower statute did not violate the equal protection clauses of the United States[2] and Michigan[3] constitutions. Respondent appeals as of right.

II
We review the trial court's ruling on a motion for summary disposition de novo. Kefgen v. Davidson, 241 Mich.App. 611, 616, 617 N.W.2d 351 (2000). Constitutional issues are also reviewed de novo on appeal. Dorman v. Clinton Twp., 269 Mich.App. 638, 644, 714 N.W.2d 350 (2006). Where the parties rely on documentary evidence in support of their arguments, appellate courts proceed under the standards of review applicable to a motion made under MCR 2.116(C)(10). Krass v. Tri-County Security, Inc., 233 Mich.App. 661, 665, 593 N.W.2d 578 (1999). When deciding a motion for summary disposition under MCR 2.116(C)(10), a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party to decide whether a genuine issue of material fact exists. Id. at 667 n. 4, 593 N.W.2d 578. Such materials are to be considered only to the extent that they are admissible in evidence. MCR 2.116(G)(6).

III
In addition to the statutory provisions of MCL 700.2202 and MCL 558.1, the Michigan Constitution recognizes the right of dower. Article 10, § 1, which abolished the disabilities of coverture as to property, provides that "[d]ower may be relinquished or conveyed as provided by law." Const 1963, art 10, § 1. Nevertheless, article 10, § 1 is reviewable for constitutionality "in light of the equal protection guarantees provided under" the United States and Michigan constitutions. See North Ottawa Community Hosp. v. Kieft, 457 Mich. 394, 405, 578 N.W.2d 267 (1998).
With regard to the state constitutional claim, every provision in our constitution "must be interpreted in the light of the document as a whole, and no provision should be construed to nullify or impair another." Lapeer Co. Clerk v. Lapeer Circuit Court, 469 Mich. 146, 156, 665 N.W.2d 452 (2003). All constitutional provisions enjoy equal dignity, and a fundamental rule of construction requires construction of every clause or section of a constitution consistent with its words, to protect and guard its purposes. In re Proposals D & H, 417 Mich. 409, 421, 339 N.W.2d 848 (1983). Accordingly, article 10, § 1 must be read together with the equal protection guarantee in article 1, *517 § 2. See Gentzler v. Smith, 320 Mich. 394, 404, 31 N.W.2d 668 (1948); Nat'l Pride at Work, Inc. v. Governor, 274 Mich.App. 147, 167, 732 N.W.2d 139 (2007). In short, because dower is expressly mentioned in our constitution, the ability of the Legislature to enact the dower statute is enshrined in our constitution. This Court is therefore obliged to read, if possible, article 10, § 1 as consistent with the state Equal Protection Clause, rather than reading them as conflicting with one another.
In Electronic Data Sys. Corp. v. Flint Twp., 253 Mich.App. 538, 551, 656 N.W.2d 215 (2002), this Court outlined the extent of equal protection clause review:
The Equal Protection Clauses of the United States and Michigan Constitutions provide that no person shall be denied the equal protection of the law. US Const, Am XIV; Const 1963, art 1, § 2. The essence of the Equal Protection Clauses is that the government not treat persons differently on account of certain, largely innate, characteristics that do not justify disparate treatment. While the Equal Protection Clauses require that persons in similar circumstances be treated alike, those things which are different in fact or opinion [are not required] to be treated in law as though they were the same. Thus, the Equal Protection Clauses do not prohibit the state from distinguishing between persons, but require that the distinctions that are made not be arbitrary or invidious. [Electronic Data Sys. Corp., supra at 551, 656 N.W.2d 215 (citations and internal quotation marks omitted).]
"[W]hen legislation is challenged as violative of the equal protection guarantee under either constitution, it is subjected to judicial scrutiny to determine whether the goals of the legislation justify the differential treatment it authorizes." Doe v. Dep't of Social Services, 439 Mich. 650, 661-662, 487 N.W.2d 166 (1992). The Court reviews legislation creating classifications based on gender using the intermediate level of scrutiny, under which "a challenged statutory classification will be upheld only if it is substantially related to an important governmental objective." Phillips v. Mirac, Inc., 470 Mich. 415, 433, 685 N.W.2d 174 (2004) (citations omitted).
In Kahn v. Shevin, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974), the United States Supreme Court upheld as constitutional a statute conferring financial benefits to widows but not widowers. The Court held that the classification was substantially related to an important governmental objective because it was "reasonably designed to further the state policy of cushioning the financial impact of spousal loss upon the sex for which that loss imposes a disproportionately heavy burden." Id. at 353-355.
In Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979), the Court considered the constitutionality of Alabama alimony statutes requiring that husbands, but not wives, pay alimony upon divorce. Id. at 270, 99 S.Ct. 1102. The Court held that the statutes served important governmental objectives, i.e., "assisting needy spouses" and reducing the economic disparity between men and women. Id. at 280, 99 S.Ct. 1102. The legislation, however, was not substantially related to achieving those objectives because in divorce actions in which alimony is a contested issue, the court holds an individualized hearing to consider the parties' "relative financial circumstances." Therefore, there was no reason to use sex as a proxy for need or to assume that due to economic disparities, women require financial assistance whereas men do not. Id. at 280-282, 99 S.Ct. 1102. Orr therefore struck down the statute as violative of the equal protection clause.
*518 Some states have abolished dower laws as unconstitutional. For example, in Stokes v. Stokes, 271 Ark. 300, 304-305, 613 S.W.2d 372 (1981), the court, relying in part on Orr, abolished a dower statute as unconstitutional because it provided a dower right to a widow without extending a similar right to a widower. But the Arkansas Supreme Court subsequently limited its holding to cases in which the husband died testate because state statutes afforded the same rights to widows and widowers of an intestate spouse. Beck v. Merritt, 280 Ark. 331, 334-335, 657 S.W.2d 549 (1983).
In Boan v. Watson, 281 S.C. 516, 316 S.E.2d 401 (1984), the court held that pursuant to Orr, the state's common-law dower right was unconstitutional, but the court gave its holding prospective effect only. Id. at 518-519, 316 S.E.2d 401. One justice disagreed with the court's reasoning because "[w]e are not told how the Orr rationale requires the result here reached." Id. at 520, 316 S.E.2d 401 (Lewis, C.J., dissenting in part). Chief Justice Lewis continued:
I do not find that Orr v. Orr establishes a directive to abolish all gender-based distinctions. That decision . . . pertained to domestic litigation and presented rather narrow issues, all of which is disregarded by today's majority opinion. In Orr v. Orr, the Court was concerned about two aspects of the Alabama alimony statute: (1) the use of gender as a "proxy" for need; (2) the claim that discrimination in favor of women was intended to compensate for past social disadvantages. The Court found that gender should not be a proxy for need, the latter being a matter which a divorce court could determine and resolve through specific awards. Finding non-discriminatory solution [sic] to the problem of the "needy spouse," the Court concluded that a gender-based statute was not a permissible way to compensate for historical disadvantages.
Probate courts do not divide estates based upon the respective "needs" of competing claimants. Rights are settled by operation of law, the outcome being determined usually by prior decisions of the decedent. Unlike an alimony case, there is no living wage-earner in an estate probate from whom payments can be extracted based on earnings. Unless a testator has established a trust, there is usually no ongoing resource upon which to draw. So it is that if women are to be "compensated" through the probate courts, there must be some equivalent of dower for them. If an alternative to dower recommends itself as social policy, the General Assembly in any case must attend that matter.
The Orr rationale is limited to divorce litigation and should not be extended to the matter of dower. There appears to be only one other court in this country which has abolished dower based on Orr v. Orr. Unfortunately, the Arkansas Supreme Court in Stokes v. Stokes provided no analysis to support its action. [Id. at 520-521, 316 S.E.2d 401 (citations omitted).]
We agree with Chief Justice Lewis that Orr, as a decision relating to alimony, should not be extended to the matters of wills and estates. Also, we agree that if an alternative to dower exists that is more desirable as a matter of policy, the Legislature, not the judiciary, must so decide. Glancy v. City of Roseville, 457 Mich. 580, 590, 577 N.W.2d 897 (1998).
Other states have upheld the constitutionality of dower laws. In In re Baer Estate, 562 P.2d 614, 615-617 (Utah, 1977), the court, relying in part on Kahn, upheld a statutory dower provision against an equal protection challenge. The Utah Supreme *519 Court explained that the statute served a longstanding policy to cushion "the financial impact of spousal loss upon the sex for which that loss imposes a disproportionately heavy burden. It is a legitimate state purpose to support widows who would have difficulty supporting themselves and therefore does not violate the equal protection clause." Id. at 616.
In In re Rincon Estate, 327 So.2d 224 (Fla., 1976), the Florida Supreme Court upheld that state's dower statutes. Relying on Kahn, the court found that "the distinction between the treatment of the sexes" was "reasonably justified by the disparity between their economic capabilities. . . ." Id. at 226. Noting that there was an exception in the state's constitution providing that "dower or curtesy may be established and regulated by law," the court stated, "[s]uch exception makes it clear that the drafters of the 1968 Constitution intended to vest authority in the Legislature to make a distinction between the sexes with respect to providing rights of a wife in the property of her husband without requiring that the husband be granted reciprocal rights." Id.
We find In re Rincon Estate persuasive. The fact that the Michigan Constitution provides that "[d]ower may be relinquished or conveyed as provided by law[,]" Const 1963, art 10, § 1, makes it clear that the drafters of the Michigan Constitution intended to recognize dower as a legitimate property interest. In addition, we agree with the Utah Supreme Court that the dower statute serves a longstanding policy of cushioning "the financial impact of spousal loss upon the sex for which that loss imposes a disproportionately heavy burden[,]" and that "[i]t is a legitimate state purpose to support widows who would have difficulty supporting themselves[.]" In re Baer Estate, supra at 616.
It remains an unfortunate fact that there are still circumstances in which the surviving wife may be significantly disadvantaged, in a way that surviving husbands generally are not, in the absence of dower, and the Legislature may properly consider such circumstances through the enacted dower statute. Under Kahn, a legislature has a legitimate interest in protecting the economic interests of widows and protecting them from becoming impoverished. The classification created by the dower statutes in this state is substantially related to an important governmental objective because it is "reasonably designed to further the state policy of cushioning the financial impact of spousal loss upon the sex for which that loss imposes a disproportionately heavy burden." Kahn, supra at 353-355, 94 S.Ct. 1734. Therefore, we hold that, pursuant to Kahn, Michigan's statutory dower provisions do not violate the Equal Protection Clause of the Michigan Constitution or the United States Constitution.
Affirmed.
NOTES
[1] MCL 700.2202(2) provides, in pertinent part, that if a person dies testate, the surviving spouse may elect one of the following:

(a) That the spouse will abide by the terms of the will.
(b) That the spouse will take½ of the sum or share that would have passed to the spouse had the testator died intestate. . . .
(c) If a widow, that she will take her dower right under sections 1 to 29 of 1846 RS 66, MCL 558.1 to 558.29. [Emphasis added.]
Pursuant to the estates in dower act, MCL 558.1 et seq., "[t]he widow of every deceased person, shall be entitled to dower, or the use during her natural life, of 1/3 part of all the lands whereof her husband was seized of an estate of inheritance, at any time during the marriage, unless she is lawfully barred thereof." MCL 558.1.
[2] The Fourteenth Amendment provides, in relevant part: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." US Const, Am XIV, § 1.
[3] "No person shall be denied the equal protection of the laws. . . ." Const 1963, art 1, § 2.