DETROIT EDISON COMPANY *v.* PUBLIC
SERVICE COMMISSION.

1. CORPORATIONS—PUBLIC UTILITIES—CONVERTIBLE DEBENTURES—FEE FOR ISSUANCE.

The debenture issue and the stock issue under a convertible debenture issue are 2 separate issues for purposes of statute imposing a fee upon the issuance of securities by public utility corporations (CL 1948, § 460.61).

2. SAME—CONVERTIBLE DEBENTURES—HOLDER AS CREDITOR.

A debenture feature in a convertible debenture is a bond with a definite and fixed amount of both principal and interest and definite times for payment of both, the holders of which are creditors of the corporate issuer, whose claims must be met prior to any consideration of stockholders' dividends, the conversion feature not altering the status until the holder exercises his option.

REFERENCES FOR POINTS IN HEADNOTES
[1, 4–6, 8–11] 51 Am Jur, Taxation § 833.
[2] 13 Am Jur, Corporations §§ 856, 861.
[3] 13 Am Jur, Corporations §§ 172, 173.
[7] 41 Am Jur, Pleading §§ 293, 296.

3. SAME—STOCK—PROFIT.

The stock of a corporation is an indicia of investment, ownership, and control; the common stockholder having no preference, but sharing in the profits of the company.

4. SAME—PUBLIC UTILITIES—CONVERTIBLE DEBENTURES—FEES FOR ISSUANCE.

Statute imposing fee "whenever any stocks, bonds, notes, or other evidences of indebtedness are authorized" requires that each of the issues under a convertible debenture issue by a public utility corporation be authorized and a fee be paid as to both, regardless of the effect of the 2 transactions in producing funds for the issuing corporation (CL 1948, § 460.61).

5. SAME—PUBLIC UTILITIES—CONVERTIBLE DEBENTURES—SALE OF STOCK—FEES.

Security transaction of public utility corporation whereby convertible debentures were authorized involved 2 issues, where application for approval sought and received authority to issue and sell shares at not less than par value which had been reserved for satisfying conversion rights that were not exercised in accordance with the provisions of the debentures (CL 1948, § 460.61).

6. SAME—PUBLIC UTILITIES—CONVERTIBLE DEBENTURES—FACE VALUE OF STOCK.

The term "face value," as used in statute imposing a fee upon stock authorized by the public service commission to be issued by public utility corporations, as applied to stock issue under convertible debentures means the par value printed on the stock, rather than the conversion price (CL 1948, § 460.61).

7. PLEADING—AMENDMENT DURING TRIAL—DISCRETION OF COURT.

Permitting plaintiff to make an amendment of pleading during the course of trial did not constitute an abuse of discretion on the part of the trial court, where the amendment was not in conflict with the basic position of plaintiff's original petition and defendants were offered time for study or preparation or production of additional testimony (Court Rule No 25 [1945]).

8. CORPORATIONS — PUBLIC UTILITIES — CONVERTIBLE DEBENTURES — CONVERSION VALUE—FACE VALUE—FEES.

Public utility corporation which had paid fee on stock issue authorized when convertible debentures were issued, on the basis of conversion value of such stock, was properly allowed credit of difference between fee based on such value and fee based on face value, or par value, as stated on the face of the stock (CL 1948, § 460.61).

9. SAME—PUBLIC UTILITIES—INDEBTEDNESS—CONTINGENT LIABILITY
—SURETYSHIP.

   The term "indebtedness," as used in statute imposing a fee upon
   a public utility corporation, required to obtain authorization
   to issue evidence of indebtedness upon payment of a fee of
   1/10 of 1%, is construed broadly so as to include the con-
   tingent liability of such corporation upon its undertaking in
   the nature of a suretyship, there being a legal right to coerce
   payment upon the happening of the contingency (CL 1948, §§
   460.61, 460.301).

10. SAME—PUBLIC UTILITIES—SURETYSHIP—INDEBTEDNESS—ATOMIC
REACTOR.

   Fee of 1/10 of 1% was properly charged public utility corpora-
   tion on its contract to guarantee payment of a stated amount
   of loans to corporation organized for purpose of developing
   an atomic reactor and from which the guarantor intended to
   use power generated there, since the contract is an evidence
   of indebtedness under pertinent statutes (CL 1948, §§ 460.61,
   460.301).

11. SAME—PUBLIC UTILITIES—CONVERTIBLE DEBENTURES—PREVIOUS
ISSUES—FEES.

   Counterclaim for additional fees in prior transactions involving
   convertible debenture issues of 1948 and 1953, upon which fee
   was computed on basis of issuance of only 1 security, *held*,
   properly dismissed, where the public utility company has paid
   all it had been ordered to pay, the orders of authorization
   were final, and no appeals taken therefrom (CL 1948, § 460.61).

12. COSTS—PUBLIC QUESTION—PUBLIC UTILITY SECURITY ISSUE FEES.

   No costs are allowed in action to recover alleged overpayment of
   fees charged public utility on issue of convertible debentures,
   and for contract of guaranty on atomic reactor development
   corporation loans, public questions being involved (CL 1948,
   §§ 460.61, 460.301).

Appeal from Court of Claims; Smith (Richard G.),
J., presiding. Submitted October 9, 1959. (Docket
No. 52, Calendar No. 48,099.) Decided February
26, 1960.

Petition by the Detroit Edison Company, a New
York corporation, against the State of Michigan and
the Michigan Public Service Commission for refund

of fees levied on issue of convertible debentures and on an undertaking guaranteeing the corporate obligation of a company organized for research, which fees were claimed either unwarranted or excessive. Defendants entered counterclaim for fees on previous authorizations of securities. Judgment for plaintiff in lesser amount than claimed. Plaintiff appeals. Commission cross-appeals. Affirmed.

*Fischer, Sprague, Franklin & Ford,* for plaintiff.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, *Robert A. Derengoski* and *John E. Tormey,* Assistants Attorney General, for defendants.

EDWARDS, J. Three substantial questions are presented by this appeal, all of which pertain to computation of the statutory fee prescribed in relation to certain activities of public utility companies which are regulated by the Michigan public service commission.

The statutory language to be construed is:

"Whenever any stocks, bonds, notes or other evidences of indebtedness are authorized by the commission to be issued in accordance with any law of this State, the party or parties upon whose application said securities are authorized shall before the issuance or sale of said securities, pay into the treasury of the State of Michigan a sum equal to 1/10 of 1% of the face value of the securities so authorized; the sum so paid not to be less than $50 in any case." CL 1948, § 460.61 (Stat Ann 1957 Cum Supp § 22.11).

The first question is whether, in computing the statutory fee, an issue of "convertible debentures" properly requires a fee to be paid both on the "face

value" of the debentures and the "face value" of the stock for which the debentures may later be traded.

The second question is whether the statutory term "face value" as applied to the stock issue in this proceeding means the par value described on the face of the certificate.

The third question is whether a certain guaranty agreement entered into between plaintiff and the Power Reactor Development Company was a "certificate of indebtedness" within the meaning of the statute, and hence subject to the fee provided.

Both the Michigan public service commission and the circuit judge presiding in the court of claims answered questions 1 and 3 in the affirmative. In relation to question 2, the Michigan public service commission computed the fee on the basis of the conversion value of the stock, and the circuit judge sitting in the court of claims reversed, holding that "face value" as applied to stock was properly to be interpreted as the "par value" shown on the face thereof.

We affirm the ruling of the court of claims on all 3 questions.

The factual background of the first 2 questions may be quickly described. On July 16, 1956, plaintiff petitioned the public service commission for approval of an issue of convertible debentures in an aggregate amount of $59,778,900. The debentures were to be convertible at any date after October 1, 1958, and before April 1, 1971, into capital stock of the company at the ratio of 3-1/4 shares of stock for each $100 of principal amount of debentures upon surrender and cancellation of the debentures. The conversion price of the stock was fixed at approximately $30, while its par value as proposed to be printed on the face of the certificates was stated as $20.

The application was approved by the commission, with the statutory fee computed by the commission and paid under protest by plaintiff at a figure of $119,557.80. This fee can be arrived at only by using the face value of the debentures, plus the conversion value of the stock issue, in the computation.

The questions posed are questions of first impression in this Court. We have cited to us as authority 2 attorney general's opinions from Michigan (OAG, Jan 7, 1920, p 113, and OAG No 2572, June 8, 1956, p 321), the latter of which overruled the former. The appellees rely upon the interpretation contained in OAG No 2572, and upon the language of the fee section of the statute. Appellant relies upon the older opinion of the attorney general, plus a similar interpretation contained in an opinion of the attorney general of the State of New York dated July 24, 1957.

We believe that the debentures issue and the stock issue are 2 separate issues for purposes of the statute under consideration. The debenture is a bond, with a definite and fixed amount of both principal and interest and definite times for payment of both. The bondholders are creditors of the corporation, whose claims must be met prior to any consideration of stockholders' dividends. The conversion feature does not alter the fact that the debenture is a bond until and unless the bondholder exercises his option.

On the other hand, stock is an indicia of investment, ownership, and control. The common stockholder has no preference, but he does share in the profits of the company. When the added stock contemplated herein is issued, it affects by dilution the rights of every other stockholder.

The language of the statute makes the fee applicable "whenever *any* stocks, bonds, notes or other evidences of indebtedness are authorized." (Emphasis supplied.)

Regardless of the effect of the 2 transactions in producing funds for the corporation, the language of the statute requires that each of the 2 issues be authorized and that the fee be paid as to both.

It may well be that the convertible debenture was not contemplated by the legislature when this statute was passed, and that it may be regarded as joining a bond issue and a stock issue so closely into 1 transaction as to warrant special treatment. If so, we believe it to be a matter for legislative attention.

In any event, we plainly are not presented here with a record where only 1 security transaction was involved. This proposed stock issue was not limited just to the redemption of the debentures. Plaintiff's application for approval of its proposed convertible debentures sought (and received) authorization "to issue and sell at not less than the par value, shares reserved for the purpose of satisfying any conversion rights of said debentures which are not exercised in accordance with the provisions of said debentures and the indenture."

There is nothing in this record to show to what extent such conversion rights would be likely to be utilized. Nor do we think the public service commission could properly speculate on this. Obviously, both the bond issue and the stock issue required investigation and approval by the regulatory body. On this record, we see no logical reason for failing to apply the fee to both.

We can be more brief about the second question. It simply requires us to say whether the statutory term "face value," as applied to the stock issue in question, referred to the par value printed on the face of the stock, or to the conversion price as used by the commission. We think the statutory intent is clear, and that "face value" is the par value as printed on the face of the stock. We find no ambiguity and only 1 interpretation appears possible.

*Big Bear Markets of Michigan, Inc.,* v. *Liquor Control Commission,* 345 Mich 569; *Watkins* v. *Atkinson,* 2 Mich 151.

As to this issue, appellees' defense is really a contention that the issue was improperly injected in the trial before the court of claims by belated amendment. The amendment did indeed come during trial. It was certainly not in conflict with the basic position as stated in plaintiff's petition, nor do we find in the transcript any claim of surprise. In any event, the trial judge offered defendants-appellees time for study or preparation or production of additional testimony. He allowed the amendment under the broad powers of Michigan Court Rule No 25 (1945). We do not believe he abused the discretion vested in him.

We agree with the trial judge that a credit of $21,536.88 should be allowed appellant, representing the difference between the fee charged on the basis of conversion value of the stock as compared to face value.

The third question requires us to determine whether a certain contract of guaranty signed by plaintiff-appellant is such as to fall within the term "other evidences of indebtedness" as employed by the statute. CL 1948, § 460.61 (Stat Ann 1957 Cum Supp § 22.11).

On October 19, 1956, appellant filed an application for authority to guarantee repayment of certain loans to be made by various banks to the Power Reactor Development Company in a principal amount not to exceed $9,000,000. On November 9th, the commission, by order, found that such guaranty was an evidence of indebtedness under CL 1948, § 460.301 (Stat Ann § 22.101), and that the statutory fee called for by CL 1948, § 460.61, was required to be paid. Thereupon appellant paid $9,000 under protest, which it seeks to recover under this count.

The Power Reactor Development Company is engaged in developing an atomic reactor in the vicinity of Monroe, Michigan.   The appellant Detroit Edison is one of the participating companies in the project and intends to make substantial use of the power to be generated there.   The contract of guaranty has the obvious purpose of securing construction loans for a power project to be constructed by the Power Reactor Development Company, which loans Power Reactor Development may or may not be able to repay.   That there is a public interest in such a guaranty by appellant for such a purpose seems beyond dispute.   It appears, likewise, beyond dispute that some investigation, at some cost, prior to authorization would be essential to any regulatory body.

We note that appellant apparently felt that the contract was one which required authorization of the commission, for the contract was thus conditioned upon its face and an application for approval was filed voluntarily by appellant.   And indeed we believe that CL 1948, § 460.301 (Stat Ann § 22.101), does require such authorization.   It is interesting to note that the section requiring appellant to seek authorization employs the very same words as the section assessing the fee:

"Any corporation   *   *   *   may issue   *   *   * other evidences of indebtedness   *   *   *   provided *   *   *   that there shall have been secured   *   *   * an order authorizing such issue."

We note that appellant asserts that its application was filed under the general powers of the commission.   CL 1948, § 460.551 *et seq.* (Stat Ann § 22.151 *et seq.*).   Appellant, however, does not point to, nor do we find under this citation, statutory language which specifically required this application as we

have noted CL 1948, § 460.301 (Stat Ann § 22.101), does.

The trial judge said in relation to this issue:

"Certainly a contract of guaranty is not a stock, bond or note. A contract of guaranty is in the nature of a suretyship. Payment if at all is in the future and rests on a contingency. Under exhibit 17, the petitioner would be required to pay a certain sum of money not exceeding $9,000,000 under the contract of guaranty only if the Power Reactor Development Company failed to pay on its notes as it was obligated to do. In the opinion of the court, the contract of guaranty clearly falls under the authority of CL 1948, § 460.61 (Stat Ann 1957 Cum Supp § 22.11), and a fee is required to be paid if the contract of guaranty—is an 'evidence of indebtedness.' The courts have on occasion defined the word 'indebtedness.' Its meaning may be broad or narrow. Indebtedness may comprehend a contingent liability—if used in the broad sense, it does —if used in the strict, it does not (*Commissioner of Internal Revenue* v. *Tennessee Co.* [CCA 3], 111 F2d 678). In the opinion of the court, the word 'indebtedness' should be given the broad interpretation. Contingent liability should be included in the definition. The statute was designed for the protection of the public and for the opportunity of investigating and approving the debt transactions of public utilities by the Michigan public service commission. In the opinion of the court, the contract of guaranty is an evidence of indebtedness under CL 1948, § 460.61 (Stat Ann 1957 Cum Supp § 22.11), and a fee was properly demanded of the petitioner."

We believe the court of claims was right. The definition employed was consistent with previous definition of the term "indebtedness" by this Court.

In *Young* v. *City of Ann Arbor,* 267 Mich 241, 248, 249, the Court employed this language:

"The term 'indebtedness' may be said to include obligations of every character whereby a municipality agrees, or is bound, to pay a sum of money to another. Usually one of the incidents of municipal indebtedness is that there is a legal right upon its maturity to coerce payment."

Further, the definition adopted by the court of claims accords with the purposes of the statutes we construe. The guaranty contract was given to guarantee payment of up to $9,000,000 of loans to Power Reactor Development Company. If that company fails to pay, beyond all doubt appellant will have to. Actually, there appears to be rather more than normal reason for careful investigation of this obligation prior to approval by the regulatory body. We hold the contract is an evidence of indebtedness under both CL 1948, § 460.301 (Stat Ann § 22.101), and CL 1948, § 460.61 (Stat Ann 1957 Cum Supp § 22.11), and that the fee was properly charged and paid.

Finally, defendants, through the attorney general, seek to counterclaim on the ground that fees charged appellant in prior transactions involving convertible debentures were computed on the basis of the issuance of only 1 security, and hence were assessed at too low a figure in the commission's orders of November 1, 1948, and December 16, 1953.

The simple answer is that these orders were final orders, and no appeals were taken therefrom. Nor have any modifications of the orders been entered. Appellant, on this record, has paid all it has been ordered to pay, and the trial judge was correct in holding that the counterclaim should be dismissed.

The judgment of the court of claims is affirmed. No costs, public questions being involved.

Dethmers, C. J., and Carr, Kelly, and Smith, JJ., concurred.

Black and Kavanagh, JJ., did not sit.

Souris, J., took no part in the decision of this case.